BURGIN et ux. v. GODWIN et al.

No. 5494.

Court of Civil Appeals of Texas. Amarillo.

Dec. 14, 1942.

Rehearing Denied Jan. 18, 1943.

Hoover, Hoover & Cussen, of Canadian, for appellants.

A. A. Lumpkin, of Amarillo, for appellees.

STOKES, Justice.

This suit was filed by the appellees, L. B. Godwin, F. P. Works, and James W. Bassett, attorneys at law, the latter two being partners practising under the firm name of Works & Bassett, against the appellants, Fred Burgin and his wife, Ada Burgin. The purpose of the suit was to recover and have partitioned to them a one-fourth interest in 427.9 acres of land together with a like proportion of $1,283.70 in money on deposit in the State National Bank of Groom. Appellees' suit was based upon a written contract entered into between them and the appellant, Fred Burgin, on the twenty-second of May, 1937, by the terms of which Fred Burgin employed appellees to represent him in whatever negotiations and litigation that might be necessary to recover his interest in the estate of his father and mother, J. A. Burgin and Florence Burgin, both of whom were then deceased. The terms of the contract reveal that the estate consisted of 4,400 acres of land in Carson and Armstrong Counties, approximately $40,000 in money then on deposit in the State National Bank of Groom, and some shares of the capital stock of Farmers Grain and Implement Company of Groom. After the suit was filed, an amicable disposition of the capital stock was made by the parties and it is not further involved in the case. The contract provided that, as consideration for the legal services to be performed by appellees, they were to receive forty per cent of all personal property and interest in the lands of the estate that might be recovered or awarded to Fred Burgin. A sliding scale was provided, however, to the effect that the full forty per cent would be paid only in the event litigation proved to be necessary and proceeded to the point of being appealed to the appellate courts. In the event the matter should become involved in litigation and did not proceed beyond the trial court, the contract provided that their interest should be one third of the property and interests so recovered, and in the event the controversy should be settled without litigation, the interests of appellees in the property received by Burgin would be only twenty-five per cent. The contract contained the provision that, in consideration of the premises and of the legal services rendered and to be rendered by appellees, appellant Fred Burgin had and did thereby "grant, bargain, sell, convey, assign, and set over unto the said L. B. Godwin, F. P. Works, and James W. Bassett an undivided forty per cent or four-tenths interest in and to all of our said rights and interests in and to said lands and properties."

The record reveals that the parents, J. A. and Florence Burgin, died intestate and

left surviving them nine living children and the children of a deceased son and a deceased daughter, as their sole heirs at law; hence, the estate was divided into eleven parts, of which appellant Fred Burgin was entitled to one. The occasion which brought about the employment of appellees arose by virtue of the fact that appellant Fred Burgin appeared to be indebted to the estate in the sum of approximately $9,000 and although the notes evidencing the indebtedness appeared upon their faces to be barred under the statute of limitations, Article 5527, R.C.S.1925, and although he claimed he had paid a large portion of them, the other heirs of the estate were insisting that the indebtedness be satisfied before he received his portion of the estate. Appellant, Fred Burgin, was also indebted to one V. K. McCaskill in the sum of approximately $5,400, consisting of a deficiency judgment and interest thereon which McCaskill had procured against him some years prior thereto in the foreclosure of some vendor's lien notes which Burgin had executed as part of the purchase price for other land. If Burgin had been required to pay the McCaskill judgment in full and the full amount claimed by the heirs of the estate, it would have consumed practically his entire interest in the estate of his father and mother. He claimed, however, that he had paid all of the indebtedness due his father except a small amount, and that the McCaskill judgment was not an equitable and just claim against him for the reason that when he purchased from McCaskill the land for which the vendor's lien notes were given as part of the purchase price, he paid a substantial cash payment and at the foreclosure sale McCaskill had bought the land in for a nominal sum.

In answer to the petition of appellees, appellants alleged that during the negotiations which resulted in the contract of employment, Burgin revealed to appellees the entire situation concerning his interest in the estate and the notes and obligations which the other heirs were contending he must discharge, together with the facts concerning the McCaskill judgment, and that appellees, through F. P. Works with whom the negotiations were conducted, represented to him, in substance, that he had a hard case and that it would be very difficult to recover his share of the estate and to obtain relief against the Mc-

Caskill judgment. Appellants alleged that during the negotiations Fred Burgin also revealed to appellee Works that his brother, Ollie Burgin, and his sister, Mrs. Frederickson, were likewise indebted to the estate, and that appellee Works represented to Fred Burgin that he and his associates could not afford to accept the employment of Fred Burgin alone and that they could not handle the matter unless Fred Burgin would procure his brother Ollie and his sister, Mrs. Frederickson, to join him in the contract of employment. They alleged that thereupon Fred Burgin discussed the matter with his brother and that his brother consented to employ appellees along with Fred and that he also signed the contract of employment. They alleged that Fred also approached his sister, Mrs. Frederickson, with the same proposition but that she declined to employ appellees; hence, the contract was executed by the two brothers only. They alleged further, in effect, that, as a matter of fact, the case was not a difficult one, as represented by appellees but was a simple matter, as viewed from the standpoint of the average lawyer, and easy to handle; that it was not necessary to include in the contract the interests of the brother and sister, as represented by appellees, but that Fred's interest in the estate could have been recovered without the joinder of either of them; and that these representations of appellees were untrue, without foundation in fact, and constituted fraud which induced appellant, Fred Burgin, to execute the contract and employ appellees as his attorneys. They further alleged that Fred Burgin was essentially a farmer, poorly educated, and wholly ignorant of matters pertaining to lawsuits or the amounts ordinarily charged by attorneys for representing their clients, and that he was overreached and imposed upon by appellees in the negotiations which resulted in the contract; that a reasonable fee for the contemplated employment and a reasonable compensation to appellees for the services they rendered was $750; and that the contract was unreasonable, unjust, and unconscionable, and they sought to be relieved from further obligations under it.

The record shows that the $40,000 on deposit in the bank was divided among the heirs, regardless of the claimed indebtedness, and that appellant Fred Burgin received $3,545.45 as his share, one-third

of which was paid to appellees, and that they had also received one third of another distribution amounting to approximately $300, aggregating about $1,500 that had been paid to appellees in cash at the time the suit was filed.

Appellants further alleged that during the years preceding these negotiations Fred Burgin had borrowed from his wife, Ada Burgin, approximately $4,000 out of individual funds owned by her at the time they were married, and after the contract of employment was executed appellees advised him that, under the law, he had a right to prefer his wife as a creditor and convey his interest in his parents' estate to his wife in settlement of this indebtedness; that they prepared a deed which was executed by Fred Burgin, in which he conveyed to his wife his entire interest in the estate, and thereafter V. K. McCaskill filed in the office of the County Clerk of Carson County an abstract of his judgment against appellant, Fred Burgin, and then filed a suit against both the appellants and the appellees in which he sought to cancel the deed to Ada Burgin, and also the contract of employment in which appellees had procured an interest in the estate, on the ground that they were executed for the fraudulent purpose of defeating his judgment against Fred Burgin. They alleged that before the McCaskill suit was ripe for trial, appellees conducted negotiations with McCaskill for a compromise and settlement of his judgment for the sum of $400; that appellees advised appellant, Ada Burgin, that if she would advance the $400 with which to settle and discharge all claims asserted by McCaskill against all of them, it would relieve all parties, including appellees, and that if she would do so, they would release and relinquish all further claims which they had under the contract of employment against appellants, including their interest in the lands of the estate and any money that might be on deposit in the bank, and accept as full satisfaction of any further claim under the contract a one-fourth interest in the capital stock of the Farmers' Grain and Implement Company and some notes that were held by the estate against other parties; that appellant, Ada Burgin, relying upon the advice so given her by appellees, and in consideration of the promises and agreements made by them, advanced the $400 out of her separate funds and the McCaskill judgment was compromised by the payment of said amount to him.

A jury was impaneled to try the case and after the testimony of both parties was introduced, on motion of appellees, the court instructed the jury to return a verdict in their favor to the effect that they owned an undivided one-fourth interest in the lands described in their petition and in the capital stock of the Farmers Grain and Implement Company and monies on deposit in the State National Bank of Groom which amounted to $1,283.70. Upon the return of the verdict as directed by the court, judgment was entered granting appellees a recovery as indicated by the verdict, to which appellants duly excepted and from which they have perfected this appeal.

Appellants present and urge eight separate assignments of error which, in effect, present for our consideration three controlling issues: First, they contend that the court erred in giving the peremptory instruction in favor of the appellees because the undisputed testimony showed that appellees had agreed to relinquish and release all further claims under the contract of employment in consideration that appellant, Ada Burgin, pay the $400 in settlement of the McCaskill judgment; secondly, that the court erred in excluding proffered testimony of appellants in support of their pleadings charging fraud on the part of appellees in the procurement of the contract of employment; and, thirdly, that the court erred in excluding testimony offered by appellants to the effect that when the contract of employment was executed by Fred Burgin, the east 200 acres of the south half of Section 132, which was a portion of the land ultimately set apart to appellants in a partition deed among the heirs of the estate, was the homestead of appellants and that the contract conveying to the appellees a one-fourth interest therein was void because Fred Burgin was not joined therein by his wife, Ada Burgin.

The testimony is undisputed that McCaskill had filed a suit against all of the parties to this suit in which he sought to cancel the deed of Fred Burgin to his wife and the contract of employment entered into by Fred Burgin and appellees, and that the McCaskill judgment, amounting to approximately $5,400, was, by the efforts of appellees, compromised and settled for $400 which was paid by Ada Burgin out of her separate funds. Appellant, Ada Burgin, testified that in January, 1939, she

618

went to the office of appellee, F. P. Works, and had a conversation with him in which he told her about the McCaskill suit that had been filed to cancel the deed and the contract of employment between appellees and her husband, and that the suit could be settled for $400. She said Mr. Works knew she had that amount of money and that he told her that "us lawyers have been sued just the same as you and Fred. We have our heads in the halter just as bad as you do now, and if you will pay that $400.00 and get us out of this scrape that we have got ourselves into, I wont charge you one thing for what I have done defending you in this McCaskill suit and the other part of the estate and all will be settled but one fourth of the chips and whetstones." She explained that by the term "chips and whetstones" was meant the capital stock in the corporation known as Farmers Grain and Implement Company and the notes that were held by the administrators of the estate. She said that Mr. Works did not inform her at that time, nor at any subsequent time, that it was necessary or advisable that the contract relative to a reduction in the fee and relinquishment of appellees' interest in the land should be in writing. in order to constitute a legal obligation and that she did not know it was necessary that the contract be reduced to writing. She said that she believed what Mr. Works had told her and that, in compliance with his agreement, she paid the $400 out of her separate funds with which the McCaskill judgment was discharged. Her testimony was not disputed by any witness, and appellants contend that, in view of this undisputed testimony, the court erred in giving a peremptory instruction in favor of the appellees.

Appellees answer this contention by setting up the statute of frauds and insist that the contract of employment constituted a conveyance to them of one-fourth of Fred Burgin's interest in the lands of his parents' estate and that they could not be divested of it by an oral contract such as appellants contend resulted from the negotiations detailed by Mrs. Burgin.

 Our statute of frauds, Article 3995, R.C.S.1925, provides that no action shall be brought upon any contract for the sale of real estate unless the promise or agreement upon which such action is based, or some memorandum thereof, be in writing and signed by the party to be charged therewith or by some person by him there-

unto lawfully authorized. The general rule is well established by many decisions of the courts of this State, however, that where one party to an oral contract, in reliance thereon, has performed his part of the agreement to such an extent that it would constitute a fraud upon him to allow the other party to repudiate the contract, equity will regard the case as being removed from the operation of the statute and will decree an enforcement of the contract. Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397; American Nat. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161.

 It is held, however, that payment of the consideration alone, even though it be in full, is not sufficient to remove the case from the operation of the statute of frauds nor to constitute such fraud as will have that effect, because the consideration can be recovered in a proper proceeding for that purpose. Where one party to the contract has been induced to alter his position on the faith of such oral contract to such an extent that the status quo can not be restored, or the other party has acquired benefits or advantages .for which compensation can not be decreed, to allow him the full benefit of the statute would constitute fraud upon the rights of the other party, and equity then regards the case as being removed from its operation. Morris v. Gaines, 82 Tex. 255, 17 S.W. 538. The testimony is undisputed that appellees were parties defendant in the suit McCaskill had filed and that McCaskill was seeking to cancel their contract of employment upon the ground that it was made in fraud of his rights and for the purpose of defeating the creditors of Fred Burgin. According to Mrs. Burgin's testimony, appellees were deeply concerned about these allegations of McCaskill and desired to be relieved from the necessity of contesting them in the McCaskill suit. They obtained that relief by the settlement of the McCaskill suit and this was in addition to the payment of the consideration of $400 by Mrs. Burgin out of her separate funds. It constituted a consideration received by appellees that could not be restored to Mrs. Burgin. It is clear from the testimony that appellees were of the opinion that Fred Burgin had the legal right to prefer his wife as a creditor and convey to her his interest in his parents' estate. They had prepared, and Fred Burgin had executed, a deed by which he conveyed such interest

to Mrs. Burgin. If they were correct in this opinion, there was no reason for anxiety concerning the McCaskill suit in so far as Mrs. Burgin's rights were concerned. The deed to her provided that the conveyance was subject to an adjustment of the indebtedness which Fred Burgin owed the estate and also subject to the contract of employment with appellees. A compromise and settlement of the McCaskill suit therefore eliminated any question as to the validity of the contract of employment and relieved appellees of the necessity of contesting that issue in the McCaskill suit. It is plain, therefore, that they received a consideration in addition to the $400 paid by Mrs. Burgin and that the benefits which they derived from it could not, as a practical matter, be divested out of them, nor could they compensate Mrs. Burgin for what they had thus received. Mrs. Burgin testified that she paid the $400 in reliance upon the promises and agreements which, according to her testimony, appellees made to her in negotiating the oral contract. If her testimony is true, then, by virtue of these promises and agreements, appellees received the benefits we have mentioned and if they should now be accorded the protection provided by the statute of frauds, it would result in a fraud upon the rights of Mrs. Burgin, which equity will not permit and, in our opinion, under the undisputed testimony in the record now before us, appellees were not entitled to its protection. Callahan v. Walsh, Tex.Civ.App., 49 S.W.2d 945.

■ Equity provides another cogent reason why appellees are not entitled to the protection of the statute of frauds. They were the attorneys of appellants and as such they were under the duty to act toward appellants with the most scrupulous fidelity and reveal to them the exact status brought about by the contractual relationship. If the oral contract was entered into, as testified to by Mrs. Burgin, it was the duty of appellees to inform her upon the question of whether it was necessary that the contract be reduced to writing and signed by the parties. Laybourne v. Bray & Shifflett, Tex.Civ.App., 190 S.W. 1159. We conceive of nothing that would excuse appellees from this duty to their clients. Under such circumstances, equity provides a clear course in the familiar maxim that "equity regards that as done which ought to have been done." The contentions of the parties must be considered, therefore, as though the contract was reduced to writing and executed by them. This rule alone would, in this case, deprive appellees of the benefits provided by the statute of frauds. The testimony concerning this entire matter presented a question that should have been submitted to the jury, and the court committed error in giving a peremptory instruction in favor of appellees which requires a reversal of the judgment.

Appellants' second contention is that the court erred in sustaining objections to testimony offered by them concerning their allegations of fraud. The record shows that in the deed of partition executed by all of the heirs of the estate and in the deed executed by Fred Burgin in which he conveyed his interest in the estate to his wife, and also in a number of orders entered by the probate court in the administration proceedings, most or all of which were prepared by the appellees, a provision was inserted to the effect that such instruments were subject to the provisions of the contract of employment between appellants and appellees. Appellants contend these acts of appellees constituted a fraud upon their rights and they offered to prove by Fred Burgin that at no time did appellees explain to him the legal effect of inserting this provision in the instruments mentioned. The court excluded the testimony upon objection of appellees. As another act of fraud perpetrated upon them by appellees, appellants offered to prove by Fred Burgin that in the negotiations which resulted in the contract of employment Mr. Works did not ask Fred Burgin if he could pay a cash fee, the inference being that he could have paid a cash fee and that it would have been much less in amount than the interests in the property conveyed to appellees in the contract. This testimony was likewise excluded. Upon still another allegation of fraud, appellants offered to prove by E. J. Cussen, one of their attorneys, that he had heard the testimony concerning the services that had been performed by appellees for appellants and, according to his experience as a lawyer, such matters did not involve any peculiar or technical knowledge of the law or legal ability, but only such matters as ordinarily confront lawyers in the trial of lawsuits and that such matters were not difficult matters from a legal standpoint but were such as

ordinarily confront lawyers in the general practise of the law.

We find nothing in all of this which would constitute fraud. The contract of employment specifically provided that it was not convenient for appellant, Fred Burgin, to pay a fee certain for the services. His attention was directed to the matter by this provision and the mere fact that appellees did not discuss the question of the payment of a cash fee could not be considered fraud of such a nature as to vitiate the contract. Neither do we discern fraud in the acts of appellees in inserting in the deeds and orders of the probate court the provision that they were made and entered subject to the contract of employment. This could not have changed the status of the parties in any respect and constituted nothing more than an effort to keep the record straight in regard to the relationship that existed between the attorneys and their clients.

As to the questions involved in the proffered testimony of the witness Cussen, we find no error in the action of the court excluding it. The testimony did not comport with the allegations made by appellants in their pleading, which were to the effect that the services contemplated by the contract and that were performed under it by appellees were not difficult but were such services as lawyers ordinarily perform. The testimony pertained to peculiar or technical knowledge of the law or legal ability, which was an entirely different question. Moreover, we know of no rule of law that requires an attorney to possess peculiar or technical knowledge of the law or unusual legal ability in order to qualify himself to charge a contingent fee for services such as those contemplated by the contract. Indeed, such services may involve simple and ordinary questions confronting lawyers in their general practise, yet entail an enormous amount of legal work and services and extend over long periods of time. The relationship of attorney and client did not exist between the parties at the time the contract of employment was under consideration, and we find nothing in all of this testimony that would have established fraud in any sense whatever. In our opinion, no error was committed by the court in excluding the testimony, and the assignments of error raising this question will be overruled.

The third and last contention made by appellants is that the east 200 acres of the south half of Section 132 constituted a portion of the 427.9 acres ultimately set apart to them by the partition and settlement of the estate between the heirs, and that this tract constituted their homestead and was a portion of that involved in the contract of employment in which Fred Burgin conveyed to appellees an undivided one-fourth interest. They contend that the contract was void as to the 200 acres because the wife of Fred Burgin did not join in the execution of the contract. We think this question is eliminated from the case by the fact that 427.9 acres ultimately was set apart to appellants and that the homestead exemption amounts to only 200 acres. The effect of the contract was to convey to appellees an undivided one-fourth interest in whatever land Fred Burgin received from the estate of his father and mother, which, according to the final adjustment and partition, proved to be 427.9 acres. Assuming that appellants were possessed of homestead rights in their undivided portion of the land belonging to the estate at the time the contract was executed, they had the right to select the homestead of 200 acres out of that which was ultimately set apart to them. We find no error in this contention and the assignments of error pertaining to it will likewise be overruled. Mass et al v. Bromberg, 28 Tex.Civ.App. 145, 66 S. W. 468; Zabawa v. Allen, Tex.Civ.App., 228 S.W. 664; McGaughey v. American Nat. Bank of Austin, 41 Tex.Civ.App. 191, 92 S.W. 1003; Watkins Land Co. v. Temple, Tex.Civ.App., 135 S.W. 1063; Hughes v. Hughes, Tex.Civ.App., 170 S.W. 847.

We have carefully considered the other contentions presented by appellants and, in our opinion, no error is revealed by them. From what we have said, it follows, however, that, in our opinion, a jury question was raised by the testimony concerning appellants' contentions relative to the contract of settlement and relinquishment by appellees of the properties sued for by them, and the court erred in giving to the jury a peremptory instruction in favor of the appellees. The judgment will therefore be reversed and the cause remanded.