**Ruben PEREZ, Appellant,**

v.

**KIRK & CARRIGAN, Dana Kirk and Steve Carrigan, Appellees.**

**No. 13–90–502–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 19, 1991.

Rehearing Overruled Jan. 23, 1992.

Philip K. Maxwell, Bob Binder, Austin, Robert Wellman Williams, McAllen, for appellant.

Russell H. McMains, Kimberly Hall Seger, McMains & Constant, Corpus Christi, Mitchell Chaney, Eduardo R. Rodriguez, Brownsville, Joe E. Garcia, McAllen, for appellees.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

**OPINION**

DORSEY, Justice.

Ruben Perez appeals a summary judgment rendered against him on his causes of action against the law firm of Kirk & Carrigan, and against Dana Kirk and Steve Carrigan individually (henceforth all three will be collectively referred to as "Kirk & Carrigan"). We reverse the summary judgment and remand this case for trial.

The present suit arises from a school bus accident on September 21, 1989, in Alton, Texas. Ruben Perez was employed by Valley Coca–Cola Bottling Company as a truck driver. On the morning of the accident, Perez attempted to stop his truck at a stop sign along his route, but the truck's brakes failed to stop the truck, which collided with the school bus. The loaded bus was knocked into a pond and 21 children died. Perez suffered injuries from the collision and was taken to a local hospital to be treated.

The day after the accident, Kirk & Carrigan, lawyers who had been hired to represent Valley Coca–Cola Bottling Company, visited Perez in the hospital for the purpose of taking his statement. Perez claims that the lawyers told him that they were his lawyers too and that anything he told them would be kept confidential.[1] With this understanding, Perez gave them a sworn statement concerning the accident.[2] How-

---

1. The summary judgment affidavits offered by Perez show the following with regard to Kirk & Carrigan's representations to him at the time they took Perez' statement:

   Ruben Perez—"Kirk told me that they were lawyers hired by Valley Coca Cola, that they were my lawyers too, and that whatever I told them would be kept confidential. I trusted what these lawyers told me and I answered their questions."

   Israel Perez (Ruben's father)—"Before beginning the questions, Kirk told Ruben that they were his lawyers, that they were going to help him, and that what they, they lawyers, learned from Ruben would be kept a secret."

   Joe Perez (Ruben's uncle)—"Before Ruben gave his statement to Kirk, Kirk told Ruben that they (the lawyers) represented Valley Coca Cola, that they were Ruben's lawyers too, and that they did not want anyone else to come in the room and to talk to Ruben. Kirk then told Ruben 'I know you are in pain, but we need to ask you these questions. Your mind would be fresh to tell us what hap-

pened. This will be kept confidential. We will get you a copy of it tomorrow. We will not give anyone a copy. It is between you and us.' Kirk and Carrigan did not say that they represented only Valley Coca Cola."

2. Among other things, Perez generally stated that he had a previous accident while driving a Coke truck in 1987 for which he was given a citation, that he had a speeding violation in 1988, that he had not filled out a daily checklist to show that he had checked the brakes on the morning of the accident, that he had never before experienced problems with the brakes on his truck and that they were working just before the accident, that he tried to apply the brakes to stop the truck, but that the brakes for the trailer were not working at all to stop the truck (the truck had two sets of brakes: the ones for the cab worked; the ones for the trailer did not and the greater weight of the trailer had the effect of pushing the entire truck, even though the cab brakes were working), that Perez did not have enough time to apply the emergency brakes,

ever, after taking Perez' statement, Kirk & Carrigan had no further contact with him. Instead, Kirk & Carrigan made arrangements for criminal defense attorney Joseph Connors to represent Perez. Connors was paid by National Union Fire Insurance Company which covered both Valley Coca–Cola and Perez for liability in connection with the accident.

Some time after Connors began representing Perez, Kirk & Carrigan, without telling either Perez or Connors, turned Perez' statement over to the Hidalgo County District Attorney's Office. Kirk & Carrigan contend that Perez' statement was provided in a good faith attempt to fully comply with a request of the district attorney's office and under threat of subpoena if they did not voluntarily comply. Partly on the basis of this statement, the district attorney was able to obtain a grand jury indictment of Perez for involuntary manslaughter for his actions in connection with the accident.[3]

Ruben Perez filed the present suit as a Plea in Intervention and Original Petition in a suit brought on behalf of the children injured in the accident against Valley Coca–Cola. Perez sued Kirk & Carrigan, along with Valley Coca–Cola, a number of other Coca–Cola entities, and National Union Fire Insurance Company. Perez asserted numerous causes of action against Kirk & Carrigan for breach of fiduciary duty, negligent and intentional infliction of emotional distress, violation of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987), and conspiracy to violate article 21.21 of the Texas Insurance Code, Tex.Ins.Code Ann. art. 21.21 (Vernon Supp.1991). Perez complained generally by his petition that Kirk & Carrigan had caused him to suffer public humiliation and emotional distress by turning over his supposedly confidential statement to the district attorney. In addition to the turnover of this statement, Perez alleged generally that Kirk & Carrigan, Valley Coca–Cola, and National Union engaged in an overall plan to shift the blame for the accident away from them and onto Perez, by concealing information tending to show that Valley Coca–Cola's faulty maintenance of the brakes on the truck was the real cause of the accident.

Kirk & Carrigan moved for summary judgment on all of the claims made against them by Perez, on the grounds that no attorney-client or other fiduciary relationship existed, that even if a fiduciary relationship did exist no damages resulted from the asserted breach, that all of Perez' claims basically allege groundless prosecution and therefore constitute an invalid claim for malicious prosecution, that Perez was not a consumer under the DTPA, and that Perez failed to state a cause of action for conspiracy to violate the Texas Insurance Code.

After hearing the motion for summary judgment, the trial court rendered judgment that Perez take nothing on his claims against Kirk & Carrigan. When the trial court then severed these claims from others within the suit, it became a final summary judgment, from which Perez presently appeals.

By his sole point of error, Perez complains simply that the trial court erred in granting Kirk & Carrigan's motion for summary judgment. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding a summary judgment, evidence favorable to the non-movant will be taken as true,

---

and that there was nothing the managers or supervisors at Valley Coca–Cola could have done to prevent the accident.

**3.** By his summary judgment affidavit offered in support of Perez, Joseph Connors stated that, in his professional opinion as a board certified criminal law specialist, if he had known that the statement had been provided and had been able to have Perez explain his lack of training or knowledge about the brake system to the grand jury, Perez would not have been indicted for manslaughter. Ruben Perez also stated in his affidavit that Valley Coca–Cola Bottling Company had not given him any instruction in brake inspection, maintenance, or use in an emergency situation.

every reasonable inference must be indulged in the non-movant's favor, and any doubts must be resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The issue is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107–08 (Tex.1984); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

### Breach of Fiduciary Duty

With regard to Perez' cause of action for breach of the fiduciary duty of good faith and fair dealing, Kirk and Carrigan contend that no attorney-client relationship existed and no fiduciary duty arose, because Perez never sought legal advice from them.

■ An agreement to form an attorney-client relationship may be implied from the conduct of the parties. Moreover, the relationship does not depend upon the payment of a fee, but may exist as a result of rendering services gratuitously. *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 388 (S.D.Tex.1969); *Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.—Corpus Christi 1990, no writ); *Prigmore v. Hardware Mut. Ins. Co. of Minnesota*, 225 S.W.2d 897, 899 (Tex.Civ.App.—Amarillo 1949, no writ).[4]

■ In the present case, viewing the summary judgment evidence in the light most favorable to Perez, Kirk & Carrigan told him that, in addition to representing Valley Coca Cola, they were also Perez' lawyers and that they were going to help him. Perez did not challenge this assertion, and he cooperated with the lawyers in giving his statement to them, even though he did not offer, nor was he asked, to pay the lawyers' fees. We hold that this was sufficient to imply the creation of an attorney-client relationship at the time Perez gave his statement to Kirk & Carrigan.

■ The existence of this relationship encouraged Perez to trust Kirk & Carrigan and gave rise to a corresponding duty on the part of the attorneys not to violate this position of trust. Accordingly, the relation between attorney and client is highly fiduciary in nature, and their dealings with each other are subject to the same scrutiny as a transaction between trustee and beneficiary. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964); *Gum v. Schaefer*, 683 S.W.2d 803, 805 n. 2 (Tex.App.—Corpus Christi 1984, no writ); *see also Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988). Specifically, the relationship between attorney and client has been described as one of *uberrima fides*, which means, "most abundant good faith," requiring absolute and perfect candor, openness and honesty, and the absence of any concealment or deception. *Hefner v. State*, 735 S.W.2d 608, 624 (Tex.App.—Dallas 1987, pet. ref'd); *State v. Baker*, 539 S.W.2d 367, 374 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.). In addition, because of the openness and candor within this relationship, certain communications between attorney and client are privileged from disclosure in either civil or criminal proceedings under the provisions of Tex.R.Civ.Evid. 503 and Tex.R.Crim. Evid. 503, respectively.[5]

■ There is evidence that Kirk & Carrigan represented to Perez that his statement would be kept confidential. Later,

---

**4.** An attorney's fiduciary responsibilities may arise even during preliminary consultations regarding the attorney's possible retention if the attorney enters into discussion of the client's legal problems with a view toward undertaking representation. *See Nolan v. Foreman*, 665 F.2d 738, 739 n. 3 (5th Cir.1982).

**5.** Disclosure of confidential communications by an attorney, whether privileged or not under the rules of evidence, is generally prohibited by the disciplinary rules governing attorneys' conduct in Texas. *See* Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, § 9 (Disciplinary Rules of Professional Conduct) Rule 1.05. In addition, the general rule is that confidential information received during the course of any fiduciary relationship may not be used or disclosed to the detriment of the one from whom the information is obtained. *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex.App.—Fort Worth 1987, no writ) (former employee is obligated not to use or divulge employer's trade secrets).

however, without telling either Perez or his subsequently-retained criminal defense attorney, Kirk & Carrigan voluntarily disclosed Perez' statement to the district attorney. Perez asserts in the present suit that this course of conduct amounted, among other things, to a breach of fiduciary duty.

Kirk & Carrigan seek to avoid this claim of breach, on the ground that the attorney-client privilege did not apply to the present statement, because unnecessary third parties were present at the time it was given. *See* Tex.R.Civ.Evid. 503(a)(5); Tex.R.Crim. Evid. 503(a)(5). However, whether or not the Rule 503 attorney-client privilege extended to Perez' statement, Kirk & Carrigan initially obtained the statement from Perez on the understanding that it would be kept confidential. Thus, regardless of whether from an evidentiary standpoint the privilege attached, Kirk & Carrigan breached their fiduciary duty to Perez either by wrongfully disclosing a privileged statement or by wrongfully representing that an unprivileged statement would be kept confidential. Either characterization shows a clear lack of honesty toward, and a deception of, Perez by his own attorneys regarding the degree of confidentiality with which they intended to treat the statement.

■ This type of deceitful and fraudulent conduct within the attorney-client relationship has been treated as a tortious breach of duty in other contexts. *See Burgin v. Godwin*, 167 S.W.2d 614 (Tex.Civ. App.—Amarillo 1942, writ ref'd w.o.m.); *Sherwood v. South*, 29 S.W.2d 805, 809 (Tex.Civ.App.—San Antonio 1930, writ ref'd) (if without consent the attorney uses confidential information from his client in order to advance the attorney's own personal interest and at the expense of the client's interest, he may be sued by his client for fraud).

In *Burgin*, for instance, the attorneys had a written agreement with their client for compensation, which the parties subsequently modified by an oral agreement. The attorneys later attempted to avoid the oral modification by asserting the statute

of frauds. In holding that the attorneys were not entitled to the protections of the statute of frauds, the Amarillo Court of Appeals reasoned that the attorneys were under a duty to act with the most scrupulous fidelity and reveal to their client the exact status brought about by the contractual relationship and the need to reduce the oral modification to writing. *Burgin*, 167 S.W.2d at 619.

Similarly, in the present case, the attorneys were at least under a fiduciary duty not to misrepresent to Perez that his conversations with them were confidential. Kirk & Carrigan should not now be able to assert the lack of attorney-client privilege (as the attorneys in *Burgin* were not allowed to assert the statute of frauds) to excuse the harm caused by their own misrepresentation to Perez. We hold that it was error for the trial court to grant summary judgment on the ground that Kirk & Carrigan did not owe or breach a fiduciary duty to Perez.

■ In addition, however, even assuming a breach of fiduciary duty, Kirk & Carrigan also contend that summary judgment may be sustained on the ground that Perez could show no damages resulting from the breach. Kirk & Carrigan contend that their dissemination of Perez' statement could not have caused him any damages in the way of emotional distress, because the statement merely revealed Perez' own version of what happened. We do not agree. Mental anguish consists of the emotional response of the plaintiff caused by the tortfeasor's conduct. *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 368 (Tex.1987); *Automobile Insurance Co. v. Davila*, 805 S.W.2d 897, 907 (Tex.App.— Corpus Christi 1991, writ denied). It includes, among other things, the mental sensation of pain resulting from public humiliation. *Davila*, 805 S.W.2d at 907.

Regardless of the fact that Perez himself made the present statement, he did not necessarily intend it to be a public response as Kirk & Carrigan contend, but only a private and confidential discussion with his attorneys. Perez alleged that the publicity caused by his indictment, resulting from

the revelation of the statement to the district attorney in breach of that confidentiality, caused him to suffer emotional distress and mental anguish. We hold that Perez has made a valid claim for such damages. *Cf. Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973) (damages for mental suffering are appropriate for an invasion of privacy).

### Malicious Prosecution

Kirk & Carrigan also asked for summary judgment on the related ground that all of Perez' causes of action, though brought under various other theories of recovery including breach of fiduciary duty and negligent and intentional infliction of emotional distress, were in reality claims for malicious prosecution, upon which Perez could not prevail as a matter of law because the criminal action had not been terminated in Perez' favor as a prerequisite to such a claim.

■ The elements of a malicious prosecution are:

(1) the commencement of a criminal prosecution against the plaintiff;

(2) which has been caused by the defendant or through the defendant's aid or cooperation;

(3) which terminated in favor of the plaintiff;

(4) that the plaintiff was innocent;

(5) that there was no probable cause for such proceedings;

(6) that it was done with malice; and

(7) that it resulted in damage to the plaintiff.

*Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied). Texas law also requires special injury for a malicious prosecution, that is, actual interference with the defendant's person (such as an arrest or detention) or property (such as an attachment, an appointment of receiver, a writ of replevin or an injunction). *St. Cyr v. St. Cyr,* 767 S.W.2d 258 (Tex.App.—Beaumont 1989, writ denied); *Martin v. Trevino,* 578 S.W.2d 763, 766 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Moiel v. Sandlin,* 571 S.W.2d 567, 570 (Tex.Civ. App.—Corpus Christi 1978, no writ).

■ Kirk & Carrigan contend that Perez should not be able to label his causes of action something else in order to avoid having to prove all of the elements of a malicious prosecution action. They rely on *Kale v. Palmer,* 791 S.W.2d 628 (Tex. App.—Beaumont 1990, writ denied), where the plaintiff physician brought actions for fraud and conspiracy in connection with an earlier malpractice judgment rendered against her that she claims was based on fabricated evidence. Noting that the physician's actions essentially alleged that defendants instituted a civil suit without probable cause, the appellate court concluded that the suit was for malicious prosecution regardless of plaintiff's attempts to call it fraud or conspiracy. *Id.* at 632. In addition, in *Wal–Mart Stores, Inc. v. Medina,* 814 S.W.2d 71 (Tex.App.—Corpus Christi 1991, n.w.h.) (on rehearing), we recently encountered a similar claim of negligent prosecution in connection with criminal charges. We held that the plaintiff could not avoid the elements of a malicious prosecution action by labeling it negligence and that there is no recovery in tort for damage caused by an incorrect, but not malicious prosecution. *Id.* at 73–74.[6]

The present suit, however, is distinguishable from *Kale* and *Wal–Mart* in that the wrong alleged is not, and cannot be judicially characterized as, the bringing or encouragement of a groundless indictment or prosecution. Rather, the wrong alleged is that a supposedly confidential statement was wrongfully revealed in breach of the attorneys' fiduciary duty, without regard

---

**6.** *But see Hughes v. Houston Northwest Medical Center, Inc.,* 680 S.W.2d 838 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 474 U.S. 571, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). In *Hughes,* a claim was made for tortious interference with business relations based upon the initiation of litigation. The opposing party argued that the real claim was for malicious prosecution. Nevertheless, the Court stated that, "litigation is a powerful weapon, and when instituted in bad faith for the purpose of causing damage or loss, it is a wrongful method of interference. The fact that the filing of a lawsuit could also serve as a basis for malicious prosecution is immaterial." *Id.* at 841–42.

to the truth of the statement or probable cause to support the resulting indictment. The process of criminal indictment was merely the mechanism by which Perez was thus exposed to public humiliation and embarrassment resulting from the attorneys' breach of fiduciary duty to keep the statement confidential as promised. We hold that it was error for the trial court to grant summary judgment on the ground that all of Perez' causes of action were merely invalid claims for malicious prosecution.

### DTPA

■ With regard to Perez' cause of action under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987), Kirk & Carrigan sought summary judgment on the ground that Perez was not a "consumer" within the definition of section 17.45(4), and was therefore not entitled to maintain an action under section 17.50.

Kirk & Carrigan contend that Perez was not a consumer because he never sought their services. Under the DTPA a consumer is one "who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). A plaintiff will still be considered a "consumer" with regard to goods or services he acquires even though a third party has actually "purchased" them for the plaintiff's benefit. *See Kennedy v. Sale,* 689 S.W.2d 890 (Tex.1985). Thus, in *Parker v. Carnahan,* 772 S.W.2d 151 (Tex. App.—Texarkana 1989, writ denied), a wife brought suit against her husband's attorneys under the DTPA for misleading advice that she had received from the attorneys in connection with her husband's legal problem. The attorneys challenged the wife's status as a consumer on the ground that their services were never sought by the wife, but were sought and purchased by the husband alone. Following the rationale of *Kennedy,* the Texarkana Court of Appeals found the wife to be a consumer on the ground that, even though the attor-

neys' services were purchased by the husband alone, they were rendered to both husband and wife. *Id.* at 158–59.

In the present case, Perez did not pay for the legal services he received from Kirk & Carrigan. Nevertheless, as in *Parker,* Perez acquired these services by "purchase or lease"—here either Valley Coca–Cola Bottling Company or its insurer, National Union Fire Insurance Company, purchased the legal services of Kirk & Carrigan generally in connection with the accident. Simply because those services were actually purchased by someone else does not disqualify Perez from claiming to be a consumer for purposes of his DTPA claim against the provider of those services. We hold that it was error for the trial court to grant summary judgment on the ground that Perez was not a consumer under the DTPA.

### Insurance Code

With regard to his cause of action for conspiracy to violate provisions of the Texas Insurance Code, Perez alleged in his Petition, among other things, that "Valley Coca–Cola, Coca–Cola Enterprises, Kirk, Carrigan, and Kirk & Carrigan conspired with National Union[7] to violate Article 21.21 of the Texas Insurance Code and the rules and regulations of the State Board of Insurance as well as the DTPA. Accordingly, Valley Coca–Cola, Coca–Cola Enterprises, National Union, Kirk, Carrigan, and Kirk & Carrigan are jointly and severally liable for all damages to Ruben Perez resulting from such violations." In their Motion for Summary Judgment, Kirk & Carrigan contend that the conduct attributed to the defendants *would not constitute a violation* of article 21.21, and that, "[b]ecause PEREZ has failed to state a cause of action against National Union Fire Insurance Company under Art. 21.21 of the Texas Insurance Code, he has likewise failed to state a cause of action in 'conspiracy' against the Defendants, KIRK, CARRIGAN, and KIRK & CARRIGAN."

■ Generally, whether the pleadings fail to state a cause of action may not be

---

**7.** By a separate paragraph, Perez asserted a claim against National Union Fire Insurance Company for violation of Tex.Ins.Code Ann. art. 21.21, § 16 (Vernon Supp.1991).

resolved by summary judgment. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983); *Shouse v. Annuity Board of the Southern Baptist Convention,* 663 S.W.2d 163 (Tex.App.—Corpus Christi 1983, no writ). Where the plaintiff's pleadings are insufficient because they fail to state a cause of action, the proper remedy for the defendant is to file special exceptions. The plaintiff must then be given an opportunity to amend after special exceptions have been sustained before the case may be dismissed for failure to state a cause of action. Thus, a motion for summary judgment alleging that the plaintiff's pleadings fail to state a cause of action cannot take the place of a special exception. *Massey,* 652 S.W.2d at 934; *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974).

However, where the plaintiff pleads facts which affirmatively negate his cause of action, summary judgment on the pleadings is proper. *Herring,* 513 S.W.2d at 9; *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Bowen v. Calallen Independent School District,* 603 S.W.2d 229, 231 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

In the present case, Kirk & Carrigan's complaint on summary judgment was simply that Perez had failed to show conspiracy to commit an article 21.21 violation.[8] However, they did not attempt to show or prove that Perez had pled facts which affirmatively negated any such cause of action. Therefore, we hold that it was error for the trial court to grant sum-mary judgment on the ground that Perez failed to state a cause of action against Kirk & Carrigan for conspiracy to violate article 21.21.

In conclusion, for the reasons stated above, we sustain Perez' point of error. We REVERSE the summary judgment rendered against Perez and REMAND this case for trial.

---

8. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The elements are: 1. two or more persons; 2. an object to be accomplished; 3. a meeting of minds on the object or course of action; 4. one or more unlawful, overt acts; and 5. damages as a proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 486 (Tex.App.—Corpus Christi 1989, writ denied).

Article 21.21 of the Texas Insurance Code, Tex.Ins.Code Ann. art. 21.21, § 4 (Vernon Supp. 1991), provides a list of acts and practices defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. Article 21.21 further provides that, "[a]ny person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices." Tex. Ins.Code Ann. art. 21.21, § 16(a) (Vernon Supp. 1991); *see Vail v. Texas Farm Bureau Mutual Insurance Co.,* 754 S.W.2d 129 (Tex.1988).