Opinion issued September 23, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-09-01056-CV

01-10-00677-CV

———————————

Kirk A. Kennedy, Appellant

V.

Gulf Coast
Cancer & Diagnostic Center at Southeast, Inc., Appellee



 



 

On Appeal from the 234th District Court

Harris County, Texas



Trial Court Case No. 2009-52439

 



O P I N I O N

This
interlocutory appeal from a temporary injunction concerns whether Kirk Kennedy,
a former in-house counsel and corporate secretary for Gulf Coast Cancer &
Diagnostic Center at Southeast, Inc. (Gulf Coast), is entitled to retain, for
his own use, a copy of a legal opinion memorandum concerning Gulf Coast’s
potential liability for its former executive’s alleged misconduct.  Kennedy solicited the memo while still
working for Gulf Coast but obtained a copy of it after Gulf Coast had
terminated his employment.  

After learning that Kennedy was
distributing the sensitive memorandum to his own lawyers and that he had
threatened to disclose its contents in the public record, Gulf Coast applied
for a temporary injunction requiring Kennedy to turn over all copies of the
memo and prohibiting Kennedy from using or disclosing the information it
contained.  The trial court granted
temporary injunctive relief, and Kennedy appeals.  He contends that the trial court abused its
discretion in granting the injunction because (1) Gulf Coast failed to
establish the prerequisites for injunctive relief; (2) as a former counsel and
corporate officer, he is entitled to retain and use the memo; and (3) the
injunction is an impermissible prior restraint on his free speech rights under
the Texas Constitution.  Kennedy also
requests mandamus relief from the temporary injunction order.  Finding no error, we affirm the trial court’s
order and deny the petition for writ of mandamus.

Background

While Kirk A. Kennedy was still
in-house counsel for Gulf Coast, he engaged the law firm of Epstein, Becker,
Green, Wickliff and Hall, P.C. to render an opinion concerning Gulf Coast’s
potential liability resulting from certain instances of a former executive’s
alleged misconduct.  Kennedy had a longstanding
relationship with EBGWH based on a personal friendship with one of its
attorneys.  That attorney had represented
Kennedy in a personal bankruptcy-related matter, and, in return, Kennedy had
assisted him with personal legal matters. 


EBGWH prepared the memo with
Kennedy’s assistance, and Kennedy provided the facts EBGWH used for its
analysis.  The memo is addressed to John
Karas, Gulf Coast’s President, and copied to “Kirk Kennedy, General Counsel.”  The opening paragraph recites that EBGWH “was
retained by Gulf Coast  . . . and its affiliates (collectively
referred to as . . . ‘Gulf Coast’).” 
A footnote identifies the corporate affiliates.  The memo outlines the scope of retention as
follows:  “EBGWH was asked, by the
Company’s General Counsel, to review information and apprise the current
President and Board of Directors of the Company as to Gulf Coast’s potential
. . . exposure and that of its current officers and directors arising
from [a former executive’s] . . . alleged misconduct.  EBGWH was also requested to evaluate the
Company’s obligations, responsibilities, and duty of disclosure, including that
of its officers and directors.”  The
footnote following that sentence reads:

EBGWH has been retained only to provide
advice to the Company and is not providing advice or counsel to the Company’s
owners, officers, or directors, who should obtain independent counsel regarding
any potential risk to them in their individual capacities.  

The memo explains potential liability issues that
could arise for Gulf Coast’s officers and directors, but nowhere discusses the
possible presence or absence of individual liability for the officers and
directors.  

Gulf Coast contends that, in late
July 2009, Kennedy, without authorization, had diverted approximately $405,000
of Gulf Coast’s funds into a bank account, named himself as the sole signatory
for the account, and used $170,000 of the funds to pay a retainer to a firm
that he claimed to have selected to “represent and defend corporate officers
and agents of Gulf Coast, specifically Kennedy.”  

Gulf Coast learned that Kennedy had
taken its funds approximately one week later. 
On or about the same day as that revelation, Kennedy contacted EBGWH,
asked the firm to prepare the memo, and assisted with its preparation.  EBGWH relied on the facts as stated by
Kennedy in rendering its opinion and did not conduct an independent investigation.  Gulf Coast terminated Kennedy’s employment as
of August 8, 2009.  EBGWH finalized the
memo after that date and, apparently unaware of Kennedy’s employment status,
inadvertently gave him a copy, which Kennedy kept. 

Meanwhile, the lawyer who had
received the $170,000 retainer from Kennedy interpleaded the funds.  After Kennedy and Gulf Coast were joined in
the interpleader action, Kennedy cross-claimed against Gulf Coast for a
declaration that he is entitled to indemnification and advancement of attorney’s
fees in potential lawsuits arising out of the misconduct charges.  As the suit progressed, Gulf Coast learned
that Kennedy had distributed copies of the memo to his personal lawyers,
disclosed its contents in unsealed court filings, and discussed it with third
parties whose interests were adverse to Gulf Coast.  Kennedy also threatened Gulf Coast that he
would make the entire memo open to the public by filing it with the court.

Gulf Coast sought and obtained a
temporary injunction prohibiting Kennedy from using or disclosing the
memo.  The trial court signed an order
granting the temporary injunctive relief on December 3, 2009, which it amended
on July 22, 2010.  The amendment provides
that the prohibition against Kennedy’s retention or use of the memo “will not
be violated” if Kennedy obtains a copy of the memo directly from EBGWH or the
memo’s author and Kennedy uses the memo and its information solely in defense
of the grievances filed against him by Gulf Coast with the State Bar of
Texas.  The temporary injunction rests on
the following findings:

·       
The description of EBGWH’s clients in the memo does not include Kennedy
as one of the clients in connection with the matters the memo addresses.

 

·       
Kennedy has provided the memo to persons having no right to the memo and
has threatened and continues to threaten not only to reveal the memo’s contents
to others but to make it public.

 

·       
Kennedy has already violated Gulf Coast’s right to privileged and private
advice from its counsel by distributing it to others.

·       
Absent a temporary injunction, the Gulf Coast’s right to the
attorney-client privilege would continue to be violated and would result in
irreparable injury.

Discussion

I.       Standard of review

Kennedy challenges the propriety of the trial court’s
temporary injunction prohibiting him from using the memo or its contents except
as provided for his defense within the State Bar grievance proceedings.  The purpose of a temporary injunction is to
preserve the status quo pending trial, but it is an extraordinary remedy and
does not issue as a matter of right.  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 204 (Tex. 2002).  Trial courts have
broad discretion in deciding whether to grant or deny a temporary injunction,
and an appellate court should reverse only if it finds a clear abuse of that
discretion.  Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d
601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  We will not reverse a trial court’s temporary
injunction unless it is “so arbitrary as to exceed the bounds of reasonable
discretion.”  Id.  We review the evidence
in a light most favorable to the trial court’s order, but an erroneous
application of the law to undisputed facts constitutes an abuse of discretion.  Id. 

II.      Attorney and client

As a preliminary matter, we address the contention that
underlies much of Kennedy’s appeal—that, as an officer of Gulf Coast
when the alleged wrongdoing occurred, and an existing client of EBGHW
individually, he has a right to retain and use the memo.  An attorney-client relationship is a
contractual relationship in which an attorney agrees to render professional
services for a client, and the relationship may be established either expressly
or impliedly from the conduct of the parties. Mellon Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 437 (Tex.
App.—Houston [1st Dist.] 2000, no pet.); Honeycutt
v. Billingsley, 992 S.W.2d 570, 581 (Tex. App.—Houston [1st Dist.] 1999,
pet. denied).  In determining whether a
contractual relationship can be implied, we use an objective standard, looking
at what the parties said and did for some manifestation that both parties
intended to create an attorney-client relationship, and do not consider their
unstated, subjective beliefs.  See Tanox, Inc. v. Akin, Gump, Strauss,
Hauer & Feld, L.L.P., 105 S.W.3d 244, 254 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied); Roberts v.
Healey, 991 S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet.
denied).  

A corporation is a legal entity separate and apart from the
persons who compose it.  Walker v. Anderson, 232 S.W.3d 899, 918
(Tex. App.—Dallas 2007, no pet.); Hajdik
v. Wingate, 753 S.W.2d 199, 201 (Tex. App.—Houston [1st Dist.] 1988), aff’d, 795 S.W.2d 717 (Tex. 1990).  As in-house counsel, Kennedy represented Gulf
Coast.  In that capacity, he had the
responsibility to “proceed as
reasonably necessary in the best interest of the organization without involving
unreasonable risks of disrupting the organization and of revealing information
relating to the representation to persons outside the organization.”  Tex.
Disciplinary R. Prof’l Conduct 1.12, reprinted
in Tex. Gov’t Code Ann. tit.
2, subtit. G app. A (Vernon 2005) (Tex.
State Bar R. art X, § 9).

The evidence before the trial court
supports its conclusion that the advice rendered in the memo was intended
solely for Gulf Coast.  Kennedy makes
much of the fact that he had an existing attorney-client relationship with
EBGWH when he solicited the memo.  The
question, however, is not whether Kennedy is or ever has been a client of
EBGWH, but whether EBGWH agreed to joint or dual representation of Gulf Coast
and Kennedy in connection with the issues raised in the memo.  Kennedy claims that he asked EBGWH to prepare
the memo with the intent that it benefit not only Gulf Coast, but also its
officers.  

Kennedy’s subjective intent
notwithstanding, no evidence objectively manifests that EBGWH secured the
parties’ consent or undertook any of the other steps that Texas law requires
for dual representation of Gulf Coast and either the officers and directors or
Kennedy individually.  See
Tex. Disciplinary R. Prof’l Conduct 1.7; 1.13 (setting out prerequisites
before attorney may consent to dual representation).  On the contrary, the memo refers to Kennedy
solely in his capacity as counsel and expressly disclaims any intent to advise
Gulf Coast’s owners, officers, or directors, recommending instead that the
officers and directors retain separate counsel. 
The trial court could properly credit this disclaimer in finding that
EBGWH did not represent Kennedy individually in connection with the memo.  The trial court also properly exercised its
discretion to determine, on the disputed evidence, that the memo did not come within
the exception to the attorney-client privilege applicable to joint
clients.  Tex. R. Evid. 503(d)(5). 
We therefore hold that the trial court did not abuse its discretion in
determining that Gulf Coast alone holds the attorney-client privilege applicable
to the memo.

III.    Temporary injunction

The Texas Civil Practice and Remedies Code allows for an
appeal from an interlocutory order that appoints a receiver or grants a
temporary injunction.  Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1),
(4) (Vernon 2008) (listing appealable interlocutory orders).  After Kennedy filed his interlocutory appeal
of the November 30, 2009 temporary injunction order, the trial court signed an
amended order on July 22, 2010 granting the same temporary relief, changing the
trial date to the two-week docket beginning October 4, 2010, and clarifying
that the order does not prohibit Kennedy from using the memo and its contents
in his defense in a grievance proceeding pending against him before the State
Bar of Texas.  We consider that order as
part of this appeal.  See Tex.
R. App. P. 29.6 (“While an appeal from an interlocutory order is
pending, on a party’s motion or on the appellate court’s own initiative, the
appellate court may review  . . . a further appealable
interlocutory order concerning the same subject matter.”).

A temporary injunction’s purpose is to preserve the status
quo of the litigation’s subject matter pending a trial on the merits.  TMC
Worldwide, L.P. v. Gray, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.]
2005, no pet.) (citing Walling v.
Metcalfe, 863 S.W.2d 56, 57 Tex. 1993)).  A temporary injunction is an extraordinary remedy
and does not issue as a matter of right.  Id.  To obtain a temporary injunction, the
applicant must plead and prove three specific elements: (1) a cause of action
against the defendant; (2) a probable right to the relief sought; and (3) a
probable, imminent, and irreparable injury in the interim.  Id.
(citing Butnaru, 84 S.W.3d at 204); Tanguy v. Laux, 259 S.W.3d 851, 857
(Tex. App.—Houston [1st Dist.] 2008, no pet.).  The absence of any one of these factors
renders an award of temporary injunctive relief inappropriate.  See  TMC
Worldwide, 178 S.W.3d at 36  Kennedy
challenges all three.  

A.      Cause of action

Kennedy first claims that the trial court erred in granting
an injunction untethered to a cause of action. 
“Texas follows a ‘fair notice’ standard for pleading, in which courts
assess the sufficiency of pleadings by determining whether an opposing party
can ascertain from the pleading the nature, basic issues, and the type of
evidence that might be relevant to the controversy.”  Low v.
Henry, 221 S.W.3d 609, 612 (Tex. 2007); see
Tex. R. Civ. P. 47(a).  Kennedy has not specially excepted to Gulf
Coast’s live pleading on file when the trial court signed the amended temporary
injunction order.  We therefore construe the
pleading liberally in Gulf Coast’s favor. 
See Horizon/CMS Healthcare Corp.
v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).

Gulf Coast’s live pleading asserts causes of action against
Kennedy for theft, attempted theft, conversion, actual and constructive fraud,
and breach of fiduciary duty.  All of
these causes of action are grounded in allegations that Kennedy misappropriated
funds belonging to Gulf Coast, kept a copy of the memo against Gulf Coast’s
wishes, and threatened to disclose the contents of the memo and other sensitive
documents that could adversely affect Gulf Coast’s business reputation and potentially
expose it to legal liability.  Gulf
Coast’s request for a temporary injunction details these allegations and asks
the court to order Kennedy and others acting in concert with him to return all
copies of the memo and to prohibit them from using or disclosing any
information contained in the memo.  This
pleading alleges facts sufficient to put Kennedy on notice of the causes of
action against Kennedy that underlie the temporary injunction.  

As Gulf Coast’s former in-house lawyer, Kennedy owes a
fiduciary duty to Gulf Coast relating to information and advice exchanged in
the scope of that employment.  A
fiduciary relationship exists between attorneys and clients as a matter of
law.  Arce
v. Burrow, 958 S.W.2d 239, 246 (Tex. App.—Houston [14th Dist.] 1997) (op.
on reh’g), aff’d as modified, 997
S.W.2d 229 (Tex. 1999).  The
attorney-client relationship is thus one of “most abundant good faith,”
requiring absolute candor, openness and honesty, and prohibiting any
concealment or deception.  Perez v. Kirk & Carrigan, 822 S.W.2d
261, 265 (Tex. App.—Corpus Christi 1991, writ denied) (citing Hefner v. State, 735 S.W.2d 608, 624
(Tex. App.—Dallas 1987, pet. ref’d)).  The
essence of a claim for breach of fiduciary duty focuses on whether an attorney
obtained an improper benefit from representing the client.  McGuire,
Craddock, Strother & Hale, P.C. v. Transcont’l Realty Investors, Inc.,
251 S.W.3d 890, 894 (Tex. App.—Dallas 2008, pet. denied); Kimleco Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921,
923 (Tex. App.—Fort Worth 2002, pet. denied).

As the client’s agent, the work product generated by the
attorney in representing the client belongs to the client.  Tex. R.
Evid. 509(b); see Hebisen v. State,
615 S.W.2d 866, 868 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ); Tex. Disciplinary R. Prof’l Conduct 1.15(d).  An attorney who uses a client’s confidential
information for his own interest and against the client’s interest to the
client’s detriment may be liable for breach of fiduciary duty.  Sherwood
v. South, 29 S.W.2d 805, 809 (Tex. Civ. App.—San Antonio 1930, writ ref’d);
Jones v. Blume, 196 S.W.3d 440, 447
(Tex. App.—Dallas 2006, pet. denied) (observing that, in context of
attorney-client relationship, “[a]n attorney breaches his fiduciary duty when
he benefits improperly from the attorney-client relationship by, among other
things improperly . . . using client confidences”); Perez, 822 S.W.2d at 266 (finding
evidence that attorneys for employer informed employee that they also
represented him and that any statements he made would be kept confidential
raised fact issue precluding summary judgment on claim for breach of fiduciary
duty when attorneys later wrongfully disclosed employee’s privileged statements
to district attorney). 

B.      Threat of probable injury

Kennedy next contends that Gulf
Coast failed to allege or proffer evidence of a threat of probable injury.  Kennedy asserts that “[u]nrebutted evidence shows that [he]
has no intention of publicly disclosing the contents of the memo,” and Gulf
Coast showed no more than a fear or apprehension of some future harm, which is
insufficient to support a temporary injunction. 


An injury is irreparable if there is no adequate remedy at
law; if for example, a prevailing applicant could not be compensated adequately
in damages or if damages cannot be measured by any certain pecuniary standard.  Butnaru,
84 S.W.3d at 204; Benefield v. State ex
rel. Alvin Cmty. Health Endeavor, Inc., 266 S.W.3d 25, 30 (Tex.
App.—Houston [1st Dist.] 2008, no pet.). 
Contrary to Kennedy’s
characterization of the evidence of his intent as “[u]nrebutted,” the record
shows that Kennedy has given a copy of the memo to several lawyers he has
retained in various capacities and distributed an affidavit with information
about the memo to the owner of a company involved in litigation against Gulf
Coast.  Because Kennedy was no longer
in-house counsel for Gulf Coast when he received a copy of the memo, and the
evidence supports the trial court’s findings that Kennedy violated and
threatened to continue to violate Gulf Coast’s privilege by divulging the memo
and its contents to others, the trial court acted within its discretion in
refusing to allow Kennedy to retain the memo. 
We do not reach Kennedy’s general contention that attorneys may retain
copies of their client’s files.  We defer
to the trial court’s resolution of the conflict in the evidence, which supports
the trial court’s findings that Kennedy violated Gulf Coast’s right to keep the
memo and its contents private and that Kennedy threatened to make the memo
public.  

          C.      Likelihood
of success on the merits

Kennedy also claims that Gulf Coast failed to make the
requisite showing that it is likely to succeed on the merits of its
claims.  To show a probable right of
recovery, the applicant need not establish that it will finally prevail in the
litigation, but must, at the very least, present some evidence that, under the
applicable rules of law, tends to support his cause of action.  Camp v.
Shannon, 348 S.W.2d 517, 519 (Tex. 1961).  

Kennedy cites Doe v. A Corp., 709 F.2d 1043 (5th Cir. 1983), and Willy v. Administrative Review Board, 423
F.3d 483 (5th Cir. 2005), as support for his claim of entitlement to the
memo.  Doe recognizes that the disciplinary rules allow an attorney to
reveal a client’s confidential information and secrets when necessary to defend
himself against an accusation of wrongful conduct because “[i]t would be a
manifest injustice to allow the client to take advantage of the rule of
exclusion as to professional confidence to the prejudice of his attorney, or
that it should be carried to the extent of depriving the attorney of the means
of obtaining or defending his own rights.” 
709 F.2d at 1048–49 (citing Tex. Disciplinary
R. Prof’l Conduct 4-101(C) and quoting ABA
Opinion 250 (1943)).  

In Willy, an in-house environmental lawyer had an ongoing conflict with
company managers over whether the company’s operations violated federal
environmental law.  423 F.3d at 486–87.  Following a dispute over Willy’s
communications with the state department of water resources, Willy was abruptly
discharged from employment.  Holding that
Willy was entitled to use the company’s otherwise privileged information to
prove his retaliatory discharge claims, the Fifth Circuit quoted with approval
language from an American Bar Association Ethics Opinion, which stated: 

The Model Rules do not prevent an in-house
lawyer from pursuing a suit for retaliatory discharge when a lawyer was
discharged for complying with her ethical obligations. An in-house lawyer
pursuing a wrongful discharge claim must comply with her duty of
confidentiality to her former client and may reveal information to the extent necessary
to establish her claim against her employer. The lawyer must take reasonable
affirmative steps, however, to avoid unnecessary disclosure and limit the
information revealed.

423 F.2d at 500 (quoting ABA Formal Ethics Opinion 01-424 (2001)).  Unlike the attorneys in Doe and Willy, Kennedy has not identified any actual
or threatened litigation in which he has demonstrated that the memo is
necessary to prove his claims or defenses but is unavailable because of the
trial court’s order.  See Tex.
R. Evid. 503(d)(3).  We have held
that the trial court did not abuse its discretion in determining that the memo
and the privilege attached to it belong solely to Gulf Coast and that Gulf
Coast’s live pleading sufficiently states claims for breach of fiduciary duty
as it relates to Kennedy’s actions with the memo.  Gulf
Coast’s by-laws expressly answer any question of Kennedy’s right to indemnity
for actions he took while an officer or director, and the temporary injunction
gives Kennedy the right to use the memo in connection with his defense of the
State Bar grievance against him, assuming he makes the requisite showing.  

Our holding does not preclude a
defense based on facts otherwise known or obtainable outside the EBGWH
representation.  Also, nothing in the injunction
prohibits Kennedy from requesting that Gulf Coast produce the memo during the
normal course of discovery, or from seeking to compel its production from Gulf
Coast as material to his claim or defense if such a showing can be made.  The trial court’s injunction precludes
Kennedy’s unilateral use or distribution of the memo over his former client’s
objections.  The trial court is in a
better position to evaluate whether the memo is admissible as evidence during a
later trial on the merits and whether, in prosecuting additional claims since
this appeal was filed, Gulf Coast ultimately waives its privilege.  The trial court has already in fact amended
the injunction in response to these sorts of considerations.  At this stage in the proceeding, however, no showing of
waiver has been made.

We have held that the trial court did not abuse its
discretion in determining that the memo and the privilege attached to it belong
solely to Gulf Coast and that Gulf Coast’s live pleading sufficiently states
claims for breach of fiduciary duty as it relates to Kennedy’s actions with the
memo.  As a result, we hold that the
trial court acted within its discretion in finding that Gulf Coast is likely to
prevail on the merits of its claims.

          D.      Preservation of status quo

Kennedy contends that the temporary
injunction order is improper because the requirement that he turn over all
copies of the memo to Gulf Coast (1) disturbs the status quo rather than
preserves it, and (2) amounts to mandatory permanent relief.  We disagree. 
Kennedy’s contention is predicated on the view that he holds a privilege
to retain the document, a view at odds with the trial court’s substantiated
evidentiary findings in support of the temporary injunction.  We also decline to entertain Kennedy’s speculation
that Gulf Coast or its lawyers would disobey a judicial order to provide him
with a copy of the memo.  We hold that
the temporary injunction properly preserves the status quo pending trial on the
merits.

IV.     Overbreadth

          Finally,
Kennedy claims that the temporary injunction is an overly broad prior restraint
on speech that interferes with his right to defend himself.  An administrative or judicial order that
forbids certain future communications constitutes a prior restraint on speech.  Alexander
v. United States, 509 U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993).  Article one, section eight of the Texas
Constitution provides that “[e]very person shall be at liberty to speak, write
or publish his opinions on any subject, being responsible for the abuse of that
privilege. . . .”  Tex. Const. art. I, § 8; see Davenport v. Garcia, 834 S.W.2d 4,
10 (Tex. 1992) (explaining that Texas Constitution provides greater right to
free speech than its federal counterpart).  Accordingly, prior restraints on speech are
presumptively unconstitutional.  See Davenport, 834 S.W.2d at 10; San Antonio Express-News v. Roman, 861
S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding).  Here, however, the attorney-client privilege supports
the trial court’s injunction.  Only Gulf
Coast, the client, holds the privilege to keep confidential or disclose the
memo.  Tex.
R. Evid. 503(b).  Kennedy thus has
no general constitutional right to disclose it. 


Kennedy also asserts that he is
entitled to disclose the memo under Texas Rule of Professional Conduct
1.05(e).  That provision does not create
as broad an exception as Kennedy suggests. 
It allows an attorney to disclose otherwise confidential information
only when it “clearly establishes that a client is likely to commit a criminal
or fraudulent act that is likely to result in death or substantial bodily harm
to a person . . . .”  Tex. Disciplinary R. Prof’l Conduct
1.05(e).  The rule applies only to prospective
conduct because “the lawyer’s knowledge of the client’s purpose may enable the
lawyer to prevent commission of the prospective crime or fraud.”  Tex. Disciplinary
R. Prof’l Conduct 1.05 cmt. 13. 
In those circumstances, the “lawyer’s interest in preventing the harm
may be more compelling than the interest in preserving confidentiality of
information.”  Id.  

Kennedy further urges that the
federal statute criminalizing misprision of a felony compels that he have the
right to disclose the memo.  See 18 U.S.C. § 4.  But a conviction under that statute will
stand only if the defendant committed an affirmative act to prevent discovery
of an earlier felony.  United States v. Adams, 961 F.2d 505,
508 (5th Cir.1992).  “Mere failure to
make known does not suffice.”  Id. at 508–09 (citation omitted), quoted in Patel v. Mukasey, 526 F.3d
800, 803 (5th Cir. 2008).  The federal
statute does not require an attorney to violate his client’s privilege.  

The amended order is tailored to
allow Kennedy to use the memo if its use is deemed necessary to his defense in
the State Bar grievance proceedings. 
Kennedy summarily asserts that he needs to defend himself, but the
record before us does not contain any request to produce the document through
discovery or a motion to compel.  In the
absence of a specific showing—consistent with Disciplinary Rule of Professional
Conduct 1.05(c)(5)—that the memo and its contents are “reasonably necessary to
enforce a claim or establish a defense on behalf of the lawyer in a controversy
between the lawyer and client,” the trial court properly protected Gulf Coast’s
interest in preserving the confidentiality of the memo while leaving open the
possibility that Kennedy may, at some point, make that showing in connection
with the State Bar grievance proceedings. 
We have no reason to doubt that the trial court would similarly permit
Kennedy’s access to the memo in connection with some other proceeding if, in
the discovery context, he is successful in proving a right to use the memo in
his defense and secures an order requiring EBGWH or Gulf Coast to produce it to
him.  We therefore hold that the
temporary injunction is not unconstitutionally overbroad.




 

Conclusion

          We
hold that the trial court acted within its discretion in granting Gulf Coast’s
application for temporary injunction.  We
therefore affirm the trial court’s amended order granting the temporary
injunction and deny the petition for writ of mandamus.

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.