Kirk A. KENNEDY, Appellant,

v.

GULF COAST CANCER & DIAGNOSTIC CENTER AT SOUTHEAST, INC., Appellee.

Nos. 01–09–01056–CV, 01–10–00677–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 23, 2010.

354

Christian J. Ward, Yetter Coleman, L.L.P., Austin, TX, Kirk Allen Kennedy,

The Kennedy Firm, Houston, TX, for Appellant.

Eugene B. Wilshire, Jr., Wilshire, Scott & Dyer, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

This interlocutory appeal from a temporary injunction concerns whether Kirk Kennedy, a former in-house counsel and corporate secretary for Gulf Coast Cancer & Diagnostic Center at Southeast, Inc. (Gulf Coast), is entitled to retain, for his own use, a copy of a legal opinion memorandum concerning Gulf Coast's potential liability for its former executive's alleged misconduct. Kennedy solicited the memo while still working for Gulf Coast but obtained a copy of it after Gulf Coast had terminated his employment.

After learning that Kennedy was distributing the sensitive memorandum to his own lawyers and that he had threatened to disclose its contents in the public record, Gulf Coast applied for a temporary injunction requiring Kennedy to turn over all copies of the memo and prohibiting Kennedy from using or disclosing the information it contained. The trial court granted temporary injunctive relief, and Kennedy appeals. He contends that the trial court abused its discretion in granting the injunction because (1) Gulf Coast failed to establish the prerequisites for injunctive relief; (2) as a former counsel and corporate officer, he is entitled to retain and use the memo; and (3) the injunction is an impermissible prior restraint on his free speech rights under the Texas Constitution. Kennedy also requests mandamus relief from the temporary injunction order. Finding no error, we affirm the trial

court's order and deny the petition for writ of mandamus.

## Background

While Kirk A. Kennedy was still in-house counsel for Gulf Coast, he engaged the law firm of Epstein, Becker, Green, Wickliff and Hall, P.C. to render an opinion concerning Gulf Coast's potential liability resulting from certain instances of a former executive's alleged misconduct. Kennedy had a longstanding relationship with EBGWH based on a personal friendship with one of its attorneys. That attorney had represented Kennedy in a personal bankruptcy-related matter, and, in return, Kennedy had assisted him with personal legal matters.

EBGWH prepared the memo with Kennedy's assistance, and Kennedy provided the facts EBGWH used for its analysis. The memo is addressed to John Karas, Gulf Coast's President, and copied to "Kirk Kennedy, General Counsel." The opening paragraph recites that EBGWH "was retained by Gulf Coast ... and its affiliates (collectively referred to as ... 'Gulf Coast')." A footnote identifies the corporate affiliates. The memo outlines the scope of retention as follows: "EBGWH was asked, by the Company's General Counsel, to review information and apprise the current President and Board of Directors of the Company as to Gulf Coast's potential ... exposure and that of its current officers and directors arising from [a former executive's] ... alleged misconduct. EBGWH was also requested to evaluate the Company's obligations, responsibilities, and duty of disclosure, including that of its officers and directors." The footnote following that sentence reads:

> EBGWH has been retained only to provide advice to the Company and is not providing advice or counsel to the Company's owners, officers, or directors, who

should obtain independent counsel regarding any potential risk to them in their individual capacities.

The memo explains potential liability issues that could arise for Gulf Coast's officers and directors, but nowhere discusses the possible presence or absence of individual liability for the officers and directors.

Gulf Coast contends that, in late July 2009, Kennedy, without authorization, had diverted approximately $405,000 of Gulf Coast's funds into a bank account, named himself as the sole signatory for the account, and used $170,000 of the funds to pay a retainer to a firm that he claimed to have selected to "represent and defend corporate officers and agents of Gulf Coast, specifically Kennedy."

Gulf Coast learned that Kennedy had taken its funds approximately one week later. On or about the same day as that revelation, Kennedy contacted EBGWH, asked the firm to prepare the memo, and assisted with its preparation. EBGWH relied on the facts as stated by Kennedy in rendering its opinion and did not conduct an independent investigation. Gulf Coast terminated Kennedy's employment as of August 8, 2009. EBGWH finalized the memo after that date and, apparently unaware of Kennedy's employment status, inadvertently gave him a copy, which Kennedy kept.

Meanwhile, the lawyer who had received the $170,000 retainer from Kennedy interpleaded the funds. After Kennedy and Gulf Coast were joined in the interpleader action, Kennedy cross-claimed against Gulf Coast for a declaration that he is entitled to indemnification and advancement of attorney's fees in potential lawsuits arising out of the misconduct charges. As the suit progressed, Gulf Coast learned that Kennedy had distributed copies of the memo to his personal lawyers, disclosed its contents

in unsealed court filings, and discussed it with third parties whose interests were adverse to Gulf Coast. Kennedy also threatened Gulf Coast that he would make the entire memo open to the public by filing it with the court.

Gulf Coast sought and obtained a temporary injunction prohibiting Kennedy from using or disclosing the memo. The trial court signed an order granting the temporary injunctive relief on December 3, 2009, which it amended on July 22, 2010. The amendment provides that the prohibition against Kennedy's retention or use of the memo "will not be violated" if Kennedy obtains a copy of the memo directly from EBGWH or the memo's author and Kennedy uses the memo and its information solely in defense of the grievances filed against him by Gulf Coast with the State Bar of Texas. The temporary injunction rests on the following findings:

- The description of EBGWH's clients in the memo does not include Kennedy as one of the clients in connection with the matters the memo addresses.
- Kennedy has provided the memo to persons having no right to the memo and has threatened and continues to threaten not only to reveal the memo's contents to others but to make it public.
- Kennedy has already violated Gulf Coast's right to privileged and private advice from its counsel by distributing it to others.
- Absent a temporary injunction, the Gulf Coast's right to the attorney-client privilege would continue to be violated and would result in irreparable injury.

## Discussion

### I.  Standard of review

Kennedy challenges the propriety of the trial court's temporary injunc-tion prohibiting him from using the memo or its contents except as provided for his defense within the State Bar grievance proceedings. The purpose of a temporary injunction is to preserve the status quo pending trial, but it is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). Trial courts have broad discretion in deciding whether to grant or deny a temporary injunction, and an appellate court should reverse only if it finds a clear abuse of that discretion. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We will not reverse a trial court's temporary injunction unless it is "so arbitrary as to exceed the bounds of reasonable discre-tion." *Id.* We review the evidence in a light most favorable to the trial court's order, but an erroneous application of the law to undisputed facts constitutes an abuse of discretion. *Id.*

### II.  Attorney and client

As a preliminary matter, we ad-dress the contention that underlies much of Kennedy's appeal—that, as an officer of Gulf Coast when the alleged wrongdoing occurred, and an existing client of EBGWH individually, he has a right to retain and use the memo. An attorney-client relationship is a contractual relation-ship in which an attorney agrees to render professional services for a client, and the relationship may be established either ex-pressly or impliedly from the conduct of the parties. *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 437 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Honey-cutt v. Billingsley*, 992 S.W.2d 570, 581 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). In determining whether a con-tractual relationship can be implied, we use an objective standard, looking at what

the parties said and did for some manifestation that both parties intended to create an attorney-client relationship, and do not consider their unstated, subjective beliefs. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Roberts v. Healey*, 991 S.W.2d 873, 880 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

■ A corporation is a legal entity separate and apart from the persons who compose it. *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex.App.-Dallas 2007, no pet.); *Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex.App.-Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717 (Tex.1990). As in-house counsel, Kennedy represented Gulf Coast. In that capacity, he had the responsibility to "proceed as reasonably necessary in the best interest of the organization without involving unreasonable risks of disrupting the organization and of revealing information relating to the representation to persons outside the organization." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art X, § 9).

■ The evidence before the trial court supports its conclusion that the advice rendered in the memo was intended solely for Gulf Coast. Kennedy makes much of the fact that he had an existing attorney-client relationship with EBGWH when he solicited the memo. The question, however, is not whether Kennedy is or ever has been a client of EBGWH, but whether EBGWH agreed to joint or dual representation of Gulf Coast and Kennedy in connection with the issues raised in the memo. Kennedy claims that he asked EBGWH to prepare the memo with the intent that it benefit not only Gulf Coast, but also its officers.

Kennedy's subjective intent notwithstanding, no evidence objectively manifests that EBGWH secured the parties' consent or undertook any of the other steps that Texas law requires for dual representation of Gulf Coast and either the officers and directors or Kennedy individually. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.7; 1.13 (setting out prerequisites before attorney may consent to dual representation). On the contrary, the memo refers to Kennedy solely in his capacity as counsel and expressly disclaims any intent to advise Gulf Coast's owners, officers, or directors, recommending instead that the officers and directors retain separate counsel. The trial court could properly credit this disclaimer in finding that EBGWH did not represent Kennedy individually in connection with the memo. The trial court also properly exercised its discretion to determine, on the disputed evidence, that the memo did not come within the exception to the attorney-client privilege applicable to joint clients. TEX.R. EVID. 503(d)(5). We therefore hold that the trial court did not abuse its discretion in determining that Gulf Coast alone holds the attorney-client privilege applicable to the memo.

### III. Temporary injunction

The Texas Civil Practice and Remedies Code allows for an appeal from an interlocutory order that appoints a receiver or grants a temporary injunction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(1), (4) (Vernon 2008) (listing appealable interlocutory orders). After Kennedy filed his interlocutory appeal of the November 30, 2009 temporary injunction order, the trial court signed an amended order on July 22, 2010 granting the same temporary relief, changing the trial date to the two-week docket beginning October 4, 2010, and clarifying that the order does not prohibit Kennedy from using the memo and its contents in his defense in a grievance pro-

ceeding pending against him before the State Bar of Texas. We consider that order as part of this appeal. *See* TEX. R.APP. P. 29.6 ("While an appeal from an interlocutory order is pending, on a party's motion or on the appellate court's own initiative, the appellate court may review . . . a further appealable interlocutory order concerning the same subject matter.").

▮ A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *TMC Worldwide, L.P. v. Gray,* 178 S.W.3d 29, 36 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993)). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* (citing *Butnaru,* 84 S.W.3d at 204); *Tanguy v. Laux,* 259 S.W.3d 851, 857 (Tex.App.-Houston [1st Dist.] 2008, no pet.). The absence of any one of these factors renders an award of temporary injunctive relief inappropriate. *See TMC Worldwide,* 178 S.W.3d at 36 Kennedy challenges all three.

### A. Cause of action

▮ Kennedy first claims that the trial court erred in granting an injunction untethered to a cause of action. "Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry,* 221 S.W.3d 609, 612 (Tex.2007); *see* TEX.R. CIV. P. 47(a). Kennedy has not specially excepted to Gulf Coast's live pleading on file when

the trial court signed the amended temporary injunction order. We therefore construe the pleading liberally in Gulf Coast's favor. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000).

Gulf Coast's live pleading asserts causes of action against Kennedy for theft, attempted theft, conversion, actual and constructive fraud, and breach of fiduciary duty. All of these causes of action are grounded in allegations that Kennedy misappropriated funds belonging to Gulf Coast, kept a copy of the memo against Gulf Coast's wishes, and threatened to disclose the contents of the memo and other sensitive documents that could adversely affect Gulf Coast's business reputation and potentially expose it to legal liability. Gulf Coast's request for a temporary injunction details these allegations and asks the court to order Kennedy and others acting in concert with him to return all copies of the memo and to prohibit them from using or disclosing any information contained in the memo. This pleading alleges facts sufficient to put Kennedy on notice of the causes of action against Kennedy that underlie the temporary injunction.

▮ As Gulf Coast's former in-house lawyer, Kennedy owes a fiduciary duty to Gulf Coast relating to information and advice exchanged in the scope of that employment. A fiduciary relationship exists between attorneys and clients as a matter of law. *Arce v. Burrow,* 958 S.W.2d 239, 246 (Tex.App.-Houston [14th Dist.] 1997) (op. on reh'g), *aff'd as modified,* 997 S.W.2d 229 (Tex.1999). The attorney-client relationship is thus one of "most abundant good faith," requiring absolute candor, openness and honesty, and prohibiting any concealment or deception. *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex.App.-Corpus Christi 1991, writ

denied) (citing *Hefner v. State*, 735 S.W.2d 608, 624 (Tex.App.-Dallas 1987, pet. ref'd)). The essence of a claim for breach of fiduciary duty focuses on whether an attorney obtained an improper benefit from representing the client. *McGuire, Craddock, Strother & Hale, P.C. v. Transcont'l Realty Investors, Inc.*, 251 S.W.3d 890, 894 (Tex.App.-Dallas 2008, pet. denied); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied).

▆▆▆ As the client's agent, the work product generated by the attorney in representing the client belongs to the client. TEX.R. EVID. 509(b); *see Hebisen v. State*, 615 S.W.2d 866, 868 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(d). An attorney who uses a client's confidential information for his own interest and against the client's interest to the client's detriment may be liable for breach of fiduciary duty. *Sherwood v. South*, 29 S.W.2d 805, 809 (Tex.Civ.App.-San Antonio 1930, writ ref'd); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied) (observing that, in context of attorney-client relationship, "[a]n attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things improperly ... using client confidences"); *Perez*, 822 S.W.2d at 266 (finding evidence that attorneys for employer informed employee that they also represented him and that any statements he made would be kept confidential raised fact issue precluding summary judgment on claim for breach of fiduciary duty when attorneys later wrongfully disclosed employee's privileged statements to district attorney).

### B. Threat of probable injury

▆▆▆ Kennedy next contends that Gulf Coast failed to allege or proffer evidence of a threat of probable injury. Kennedy asserts that "[u]nrebutted evidence shows that [he] has no intention of publicly disclosing the contents of the memo," and Gulf Coast showed no more than a fear or apprehension of some future harm, which is insufficient to support a temporary injunction.

▆▆▆ An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages or if damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Benefield v. State ex rel. Alvin Cmty. Health Endeavor, Inc.*, 266 S.W.3d 25, 30 (Tex.App.-Houston [1st Dist.] 2008, no pet.). Contrary to Kennedy's characterization of the evidence of his intent as "[u]nrebutted," the record shows that Kennedy has given a copy of the memo to several lawyers he has retained in various capacities and distributed an affidavit with information about the memo to the owner of a company involved in litigation against Gulf Coast. Because Kennedy was no longer in-house counsel for Gulf Coast when he received a copy of the memo, and the evidence supports the trial court's findings that Kennedy violated and threatened to continue to violate Gulf Coast's privilege by divulging the memo and its contents to others, the trial court acted within its discretion in refusing to allow Kennedy to retain the memo. We do not reach Kennedy's general contention that attorneys may retain copies of their client's files. We defer to the trial court's resolution of the conflict in the evidence, which supports the trial court's findings that Kennedy violated Gulf Coast's right to keep the memo and its contents private and that Kennedy threatened to make the memo public.

### C. Likelihood of success on the merits

Kennedy also claims that Gulf Coast failed to make the requisite showing that it is likely to succeed on the merits of its claims. To show a probable right of recovery, the applicant need not establish that it will finally prevail in the litigation, but must, at the very least, present some evidence that, under the applicable rules of law, tends to support his cause of action. *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961).

Kennedy cites *Doe v. A Corp.*, 709 F.2d 1043 (5th Cir.1983), and *Willy v. Administrative Review Board*, 423 F.3d 483 (5th Cir.2005), as support for his claim of entitlement to the memo. *Doe* recognizes that the disciplinary rules allow an attorney to reveal a client's confidential information and secrets when necessary to defend himself against an accusation of wrongful conduct because "[i]t would be a manifest injustice to allow the client to take advantage of the rule of exclusion as to professional confidence to the prejudice of his attorney, or that it should be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights." 709 F.2d at 1048–49 (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 4–101(C) and quoting ABA OPINION 250 (1943)).

In *Willy*, an in-house environmental lawyer had an ongoing conflict with company managers over whether the company's operations violated federal environmental law. 423 F.3d at 486–87. Following a dispute over Willy's communications with the state department of water resources, Willy was abruptly discharged from employment. Holding that Willy was entitled to use the company's otherwise privileged information to prove his retaliatory discharge claims, the Fifth Circuit quoted with approval language from an American Bar Association Ethics Opinion, which stated:

The Model Rules do not prevent an in-house lawyer from pursuing a suit for retaliatory discharge when a lawyer was discharged for complying with her ethical obligations. An in-house lawyer pursuing a wrongful discharge claim must comply with her duty of confidentiality to her former client and may reveal information to the extent necessary to establish her claim against her employer. The lawyer must take reasonable affirmative steps, however, to avoid unnecessary disclosure and limit the information revealed.

423 F.3d at 500 (quoting ABA FORMAL ETHICS OPINION 01–424 (2001)). Unlike the attorneys in *Doe* and *Willy*, Kennedy has not identified any actual or threatened litigation in which he has demonstrated that the memo is necessary to prove his claims or defenses but is unavailable because of the trial court's order. *See* TEX.R. EVID. 503(d)(3). We have held that the trial court did not abuse its discretion in determining that the memo and the privilege attached to it belong solely to Gulf Coast and that Gulf Coast's live pleading sufficiently states claims for breach of fiduciary duty as it relates to Kennedy's actions with the memo. Gulf Coast's by-laws expressly answer any question of Kennedy's right to indemnity for actions he took while an officer or director, and the temporary injunction gives Kennedy the right to use the memo in connection with his defense of the State Bar grievance against him, assuming he makes the requisite showing.

Our holding does not preclude a defense based on facts otherwise known or obtainable outside the EBGWH representation. Also, nothing in the injunction prohibits Kennedy from requesting that Gulf Coast produce the memo during the normal course of discovery, or from seeking to compel its production from Gulf Coast as material to his claim or defense if such a showing can be made. The trial court's

injunction precludes Kennedy's unilateral use or distribution of the memo over his former client's objections. The trial court is in a better position to evaluate whether the memo is admissible as evidence during a later trial on the merits and whether, in prosecuting additional claims since this appeal was filed, Gulf Coast ultimately waives its privilege. The trial court has already in fact amended the injunction in response to these sorts of considerations. At this stage in the proceeding, however, no showing of waiver has been made.

We have held that the trial court did not abuse its discretion in determining that the memo and the privilege attached to it belong solely to Gulf Coast and that Gulf Coast's live pleading sufficiently states claims for breach of fiduciary duty as it relates to Kennedy's actions with the memo. As a result, we hold that the trial court acted within its discretion in finding that Gulf Coast is likely to prevail on the merits of its claims.

### D. *Preservation of status quo*

Kennedy contends that the temporary injunction order is improper because the requirement that he turn over all copies of the memo to Gulf Coast (1) disturbs the status quo rather than preserves it, and (2) amounts to mandatory permanent relief. We disagree. Kennedy's contention is predicated on the view that he holds a privilege to retain the document, a view at odds with the trial court's substantiated evidentiary findings in support of the temporary injunction. We also decline to entertain Kennedy's speculation that Gulf Coast or its lawyers would disobey a judicial order to provide him with a copy of the memo. We hold that the temporary injunction properly preserves the status quo pending trial on the merits.

### IV. *Overbreadth*

■■■ Finally, Kennedy claims that the temporary injunction is an overly broad prior restraint on speech that interferes with his right to defend himself. An administrative or judicial order that forbids certain future communications constitutes a prior restraint on speech. *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993). Article one, section eight of the Texas Constitution provides that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege. . . ." TEX. CONST. art. I, § 8; *see Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992) (explaining that Texas Constitution provides greater right to free speech than its federal counterpart). Accordingly, prior restraints on speech are presumptively unconstitutional. *See Davenport*, 834 S.W.2d at 10; *San Antonio Express–News v. Roman*, 861 S.W.2d 265, 267 (Tex.App.-San Antonio 1993, orig. proceeding). Here, however, the attorney-client privilege supports the trial court's injunction. Only Gulf Coast, the client, holds the privilege to keep confidential or disclose the memo. TEX.R. EVID. 503(b). Kennedy thus has no general constitutional right to disclose it.

■■■ Kennedy also asserts that he is entitled to disclose the memo under Texas Rule of Professional Conduct 1.05(e). That provision does not create as broad an exception as Kennedy suggests. It allows an attorney to disclose otherwise confidential information only when it "clearly establishes that a client is likely to commit a criminal or fraudulent act that is likely to result in death or substantial bodily harm to a person. . . ." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(e). The rule applies only to prospective conduct because "the lawyer's knowledge of the client's purpose may enable the lawyer to prevent commission of the prospective crime or fraud."

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 13. In those circumstances, the "lawyer's interest in preventing the harm may be more compelling than the interest in preserving confidentiality of information." *Id.*

 Kennedy further urges that the federal statute criminalizing misprision of a felony compels that he have the right to disclose the memo. *See* 18 U.S.C. § 4. But a conviction under that statute will stand only if the defendant committed an affirmative act to prevent discovery of an earlier felony. *United States v. Adams,* 961 F.2d 505, 508 (5th Cir.1992). "Mere failure to make known does not suffice." *Id.* at 508–09 (citation omitted), *quoted in Patel v. Mukasey,* 526 F.3d 800, 803 (5th Cir.2008). The federal statute does not require an attorney to violate his client's privilege.

The amended order is tailored to allow Kennedy to use the memo if its use is deemed necessary to his defense in the State Bar grievance proceedings. Kennedy summarily asserts that he needs to defend himself, but the record before us does not contain any request to produce the document through discovery or a motion to compel. In the absence of a specific showing—consistent with Disciplinary Rule of Professional Conduct 1.05(c)(5)—that the memo and its contents are "reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between the lawyer and client," the trial court properly protected Gulf Coast's interest in preserving the confidentiality of the memo while leaving open the possibility that Kennedy may, at some point, make that showing in connection with the State Bar grievance proceedings. We have no reason to doubt that the trial court would similarly permit Kennedy's access to the memo in connection with some other proceeding if, in the discovery context, he is successful in proving a right to use the memo in his defense and secures an order requiring EBGWH or Gulf Coast to produce it to him. We therefore hold that the temporary injunction is not unconstitutionally overbroad.

## Conclusion

We hold that the trial court acted within its discretion in granting Gulf Coast's application for temporary injunction. We therefore affirm the trial court's amended order granting the temporary injunction and deny the petition for writ of mandamus.