**Affirmed and Memorandum Opinion filed January 31, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00235-CV

---

**MARY REBECCA WHITENER, IN HER CAPACITIES AS TRUSTEE OF THE CHARLES CLEVELAND WHITENER, III MARITAL TRUST, TRUSTEE OF THE CHARLES CLEVELAND WHITENER, III RESIDUARY TRUST, AND INDEPENDENT EXECUTOR OF THE ESTATE OF CHARLES CLEVELAND WHITENER, III Appellant**

**V.**

**ORIGIN BANK, Appellee**

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2021-14052**

---

## M E M O R A N D U M   O P I N I O N

Appellant Mary Rebecca Whitener, in her capacities as (1) Trustee of the Charles Cleveland Whitener, III Marital Trust, (2) Trustee of the Charles Cleveland Whitener, III Residuary Trust, and (3) Independent Executor of the Estate of Charles Cleveland Whitener, III, appeals a summary judgment granted in favor of appellee

Origin Bank on Origin's claims for breach of guaranty agreements against the trusts and the Estate. Mary contends: (1) the district court lacked subject matter jurisdiction over Origin's breach of contract claims because the County Court of Taylor County, in which the Estate of Charles Cleveland Whitener, III (the "Estate") matters are pending, had exclusive jurisdiction over them; and (2) the trial court erred in granting summary judgment in Origin's favor against the Estate because Origin's claim was a preferred debt and lien claim and Origin seized the collateral securing the loan.

We reject Mary's jurisdictional argument because the Taylor County Court's jurisdiction over Origin's claims was not exclusive, and the Harris County district court has concurrent subject matter jurisdiction. We also conclude that Origin's claim against the Estate was not a secured claim, and Mary's arguments that Origin could not proceed against the Estate lack merit. We affirm the judgment in Origin's favor.

## Background

In 2013, Origin entered into a letter loan agreement with the Lauren Corporation, which was amended periodically (collectively, the "Loan Agreement").[1] In connection with the Loan Agreement, the Lauren Corporation executed promissory notes in favor of Origin, which were also amended periodically. Origin remained the holder of the notes. The Loan Agreement and promissory notes were secured by a lien and security interest against accounts, stock, and equipment owned by the Lauren Corporation and other companies. On February 4, 2014, Charles Cleveland Whitener, III executed a guaranty agreement,

---

[1] The original letter loan agreement and promissory notes were between the Lauren Corporation and Community Trust Bank, but later modifications substituted Origin as the lender.

2

unconditionally guaranteeing all debts, liabilities, and obligations of the Lauren Corporation under the Loan Agreement.

Charles died on February 20, 2020. His will currently is being probated in County Court in Taylor County.[2] On August 15, 2020, the Residuary Trust and the Marital Trust executed guaranty agreements, unconditionally guaranteeing all debts, liabilities, and obligations of the Lauren Corporation. Also on August 15, Mary, in her capacity as trustee of the trusts and executor of the Estate, among others, executed a "Consent of Guarantors" agreement, ratifying the previously signed guaranty agreements. This ratification provides:

1. Guarantors acknowledge and consent to each of the terms and provisions of the Amendments and the modification of the Loan Documents, as therein provided.

2. Guarantors ratify, affirm, reaffirm, acknowledge, confirm, and agree that the Guaranty Agreements represent the valid and binding obligations of Guarantors to and for the benefit of [Origin].

3. Guarantors agree that the Guaranty Agreements are in full force and effect and there are no claims for rights of offset against, or defenses or counterclaims to, the terms and provisions of the Guaranty Agreements or the other obligations created or evidenced by the Guaranty Agreements.

In January 2021, Origin notified the Lauren Corporation that it was in default under the Loan Agreement. The parties do not dispute that the Lauren Corporation breached the Loan Agreement by defaulting on the loan. On March 10, Origin filed suit for breach of the Loan Agreement and the guaranties against, *inter alia*, the

---

[2] The County Court of Taylor County is a constitutional county court, not a statutory county court at law. *See* Tex. Const. art. V, § 15 ("There shall be established in each county in this State a County Court, which shall be a court of record . . . ."); Tex. Gov't Code § 25.2231 (creating County Court at Law of Taylor County and County Court at Law No. 2 of Taylor County); *Dailing v. State*, 546 S.W.3d 438, 444-45 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (discussing difference between constitutional county courts and statutory county courts). We refer to this court as the "Taylor County Court."

3

Lauren Corporation, the Marital Trust, and the Residuary Trust.[3]  On March 11, Origin filed an authenticated unsecured claim against the Estate in the probate proceedings based on Charles's guaranty of the Lauren Corporation's loan.  The Lauren Corporation filed for bankruptcy protection in April 2021.  Origin's unsecured claim against the Estate was deemed rejected by the Taylor County Court on April 11.  On April 14, Origin amended its petition in the district court to name the Estate as a defendant for breach of Charles's guaranty of the Lauren Corporation's loan.

Origin moved for a traditional summary judgment on its breach of guaranty claims against the Marital Trust, the Residual Trust, and the Estate.  In its motion, Origin asserted the following undisputed facts:

1. Origin Bank and Borrower executed a Loan Agreement.  In connection with the Loan agreement, Borrower . . . executed Promissory Notes in favor of Origin Bank.

2. Guarantors . . . [Charles] Whitener, Residual Trust, and Marital Trust executed Guaranty Agreements in which they absolutely and unconditionally guaranteed all debts, liabilities, and obligations of the Borrower under the Loan Agreement.

3. On February 20, 2020, [Charles] Whitener passed away.  The Whitener Will is currently being probated.  On March 11, 2021, Origin Bank filed a claim in the Probate Proceeding.

4. On or about August 15, 2020, Guarantor Defendants, jointly and severally, ratified the Guaranty Agreements.

5. The Loan Agreement is in default.

6. Origin Bank provided notice and demand for payment to the Borrower and Defendant Guarantors on the default and the amount outstanding under the Loan Agreement to no avail.

---

[3] Other defendants in this lawsuit, with the exception of TLC Air, LLC, were non-suited without prejudice.  TLC Air, LLC has not appealed the judgment against it.

7. The current amounts due and owing under the Guaranty Agreements, including interest, total $8,024,932.33.

(Citations to summary judgment motion attachments omitted).

Among other evidence, Origin attached to its summary judgment motion the Lauren Corporation's Loan Agreement and the Marital Trust's, the Residual Trust's, and Charles's guaranty agreements. Origin also sought attorney's fees pursuant to the guaranty agreements.

Mary, as trustee of the trusts and executor of the Estate, did not dispute these facts, but responded to Origin's summary judgment motion with four legal arguments. First, she asserted that Origin, as a purported secured creditor of the Estate, already seized the collateral to which it was entitled under the Loan Agreement, and thus could not proceed against the Estate for any deficiency between that collateral and the debt.[4] Second, she argued that the Estate never guaranteed the loan and thus Origin could not proceed against the Estate on its guaranty claim. She then urged that, because Origin could not proceed against the Estate, it could not proceed against the trusts because they are beneficiaries of the Estate. Finally, she contended that Origin lacked standing to sue the Estate because it did not have a justiciable interest in the Estate—i.e., it could not collect any funds from the Estate.

Origin replied to Mary's response, explaining that it was an unsecured, not a secured, creditor of the Estate, but that it was a secured creditor against the Lauren Corporation. Because it was an unsecured creditor of the Estate, Origin argued that Mary's invocation of various provisions of the Estates Code regarding secured creditors lacked merit. Origin further stressed that, because Charles personally

---

[4] According to unsworn declarations attached to Mary's summary judgment response, Origin, "acting under that certain Letter Loan Agreement dated October 15, 2013 between it and Lauren, seized the funds in Lauren Engineers & Constructors, Inc.'s ('LEC') operating accounts," which caused "Lauren and its subsidiary entities, including LEC, [to] file for bankruptcy."

5

guaranteed the Lauren Corporation's Loan Agreement, the Estate was liable on the guaranty. Finally, Origin clarified that, because the Marital Trust and the Residuary Trust are separate legal entities that signed guaranty agreements for the Lauren Corporation's loan, they were also liable on their guaranties.

The trial court granted Origin's summary judgment motion, awarding it $8,245,617.96 in damages, $66,171.84 in attorney's fees, and post-judgment interest jointly and severally against the Estate and trusts. Mary filed a motion for new trial and plea to the jurisdiction, reasserting the arguments she had made in her summary judgment response. Also, Mary argued for the first time that the district court lacked subject matter jurisdiction over Origin's claims because the Taylor County Court exercising probate jurisdiction over the Estate has exclusive jurisdiction of all matters related to the probate proceeding, including Origin's claims.

The trial court denied Mary's motion for new trial and plea to the jurisdiction, and Mary timely appealed.

## Jurisdiction

In her first issue, Mary contends the trial court should have granted her plea to the jurisdiction and dismissed this case because the district court lacked subject matter jurisdiction over Origin's suit under the Estates Code. According to Mary, the Taylor County Court exercising probate jurisdiction over the Estate has exclusive jurisdiction of all matters related to the probate proceeding, including Origin's claims. In response, Origin argues that the district court has subject matter jurisdiction over its lawsuit and that the Taylor County Court's jurisdiction over Origin's claims is not exclusive of, but concurrent with, the district court. Origin says the issue is one of dominant jurisdiction, and Mary waived her jurisdictional complaint by failing to file a plea in abatement.

6

Subject matter jurisdiction is necessary to a court's authority to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). Subject matter jurisdiction is never presumed, and challenges to it cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Thus, challenges to subject matter jurisdiction may be raised at any time. *See Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 445). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010); *San Jacinto River Auth. v. Lewis*, 629 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

The fundamental question raised by Mary's plea to the jurisdiction is whether a Harris County district court has subject matter jurisdiction over Origin's claims. The Texas Constitution and state statutes provide the sole sources of jurisdiction for Texas courts. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). We observe that "district courts are constitutionally authorized to resolve legal disputes." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018). As courts of general jurisdiction, district courts are presumed to have subject matter jurisdiction over a dispute unless the Constitution or another law grants exclusive jurisdiction to another court or to an administrative agency. *See id.*; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000); Tex. Const. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.") Thus, the supreme court has held that "[a] district court has subject-matter jurisdiction to resolve disputes unless the

Legislature divests it of that jurisdiction." *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44 (Tex. 2021).

It is Mary's burden, therefore, to demonstrate that exclusive jurisdiction over Origin's claims lies in a court other than the Harris County district court. Mary posits that the Harris County district court lacks jurisdiction because the Taylor County Court possesses exclusive jurisdiction over the probate proceedings and because Origin's claims are related to those proceedings. We disagree.

Texas Estates Code section 32.001 states, "[a]ll probate proceedings must be filed and heard in a court exercising original probate jurisdiction." Tex. Est. Code § 32.001. Original probate jurisdiction is vested in statutory probate courts in counties that have them. *Id.* § 32.002(c). In counties like Taylor County that lack a statutory probate court, *see* Tex. Gov't Code § 25.2231, original probate jurisdiction exists in either a county court at law or in a county court. *See* Tex. Est. Code § 32.002(a), (b). In counties where there are county courts at law exercising original probate jurisdiction, that jurisdiction is concurrent with the county court. *See id.* § 32.002(b).

The Estate proceedings were filed in County Court in Taylor County, which has original probate jurisdiction. *See id.*; Tex. Gov't Code § 26.321 ("The County Court of Taylor County has the general jurisdiction of a probate court and juvenile jurisdiction as provided by Section 26.042(b) but has no other criminal or civil jurisdiction."). The court exercising original probate jurisdiction also has jurisdiction of all matters related to the probate proceeding as specified in section 31.002 for that type of court, which includes "an action brought against a personal representative in the representative's capacity as personal representative." Tex. Est. Code §§ 31.002(a)(4), (b)(1), 32.001. Thus, the Taylor County Court possesses

8

subject matter jurisdiction over Origin's claims against the Estate, and no party takes issue with that proposition.[5]

Mary directs us, however, to no provision in the Texas Constitution or in any Texas statute declaring that the original probate jurisdiction exercised by a county court is *exclusive* as to all other courts. Exclusive jurisdiction is "a court's power to adjudicate an action or class of actions to the exclusion of all other courts." *Dailing v. State*, 546 S.W.3d 438, 450 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (internal quotation omitted). The parties agree that the Estates Code is silent on whether a constitutional county court sitting in probate has exclusive jurisdiction. The legislature could have enacted such a provision had it desired to do so, as it has in other instances. *See, e.g.*, Tex. Gov't Code § 25.003(e) ("In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction."); Tex. Est. Code § 32.005 (vesting statutory probate courts, in counties that have them, with "exclusive jurisdiction of all probate proceedings" and providing that actions "related to the probate proceeding must be brought" therein, unless the statutory probate court's jurisdiction is concurrent with a district court's or any other court's jurisdiction); *id.* § 1022.005 (vesting statutory probate court with "exclusive jurisdiction of all guardianship proceedings, regardless of whether contested or uncontested"); Tex. Fam. Code § 51.04 (juvenile court has "exclusive original jurisdiction" over proceedings under the Juvenile Justice Code). Indeed, the legislature has made clear that generally a county court's original probate jurisdiction is *not* exclusive when the county has a statutory county court at law but not a statutory probate court. *See* Tex. Est. Code § 32.002(b) (providing for

---

[5] Further, Origin has not asserted that the Taylor County Court lacks jurisdiction over any of its other claims. For example, the parties have not joined issue on whether Origin's claims against Mary as trustee of trusts are "related" to the probate proceeding. We need not address that issue, as our focus is whether the district court possessed jurisdiction over Origin's claims.

9

concurrent probate jurisdiction). The plain text of section 32.002(b) shows, at a minimum, that the legislature did not intend for a county court's original probate jurisdiction to be exclusive to that court.

Acknowledging this jurisdictional reality, Mary relies on this court's opinion in *Thomas v. Tollon*, 609 S.W.2d 859 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), to assert that, once Charles's will was admitted to probate in Taylor County Court, that court was vested with "exclusive jurisdiction to hear all incident claims." *Id.* at 860-61. Mary's reliance on *Thomas* is misplaced. *Thomas* involved a determination of heirship, which the court explained was a matter committed exclusively to the county court sitting in probate. *See id.* at 860 ("Exclusive original jurisdiction to determine heirship is conferred upon the county court sitting in probate, and the district court has no such original jurisdiction."). Thus, *Thomas* is distinguishable from today's case, which does not involve any similar statute establishing exclusive original jurisdiction over Origin's breach of contract claims.[6]

Importantly, the Supreme Court of Texas has rejected the proposition for which Mary cites *Thomas*: the notion that "a county court sitting in probate attains exclusive jurisdiction over matters appertaining and incident to the estate once administration is opened there." *See In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding). In *Puig*, the supreme court addressed whether the Webb County district court erred in denying the defendants' plea in abatement when the plaintiffs' action was "appertaining and incident to" an earlier-filed and ongoing probate proceeding in the Fort Bend county court at law sitting in probate. *Id.* at 303, 305. Although the Fort Bend county court had the power to hear the plaintiffs' lawsuit,

---

[6] *Thomas* also involved interpretation of a repealed provision of the former Probate Code. *See* Act of June 19, 2009, 81st Leg., R.S., Ch. 1351, § 12(h), 2009 Tex. Gen. Laws 4273, 4279.

the *Puig* court refused to hold that it had exclusive jurisdiction. *Id*. at 305. Instead, the court considered the issue one of dominant jurisdiction. *See id*.

Here, we conclude that Mary has not demonstrated that the Texas Constitution or another law vests exclusive jurisdiction over Origin's claims in the Taylor County Court. Rather, subject matter jurisdiction over Origin's claims is concurrent in both courts. Thus, the trial court did not err in denying Mary's plea to the jurisdiction.

We overrule Mary's first issue.

## Mary's Other Arguments

In her second issue, Mary asserts that the trial court should have denied Origin's summary judgment motion because Origin "irrevocably elected to proceed on its secured debt against the Estate as a preferred debt and lien claim rather than as a matured secured claim." Mary makes several arguments in support of this issue, but none of them are meritorious.

### 1. *Origin does not have a secured claim against the Estate.*

First, Mary contends that, because Origin elected to treat its claim as a preferred debt and lien claim, by seizing the underlying collateral, it cannot now recover the balance from the Estate. The Estates Code sections upon which Mary relies apply to secured claims. *See* Tex. Est. Code §§ 355.151, 355.152 (both providing for the treatment of secured claims against an estate). As this court has held, if a secured creditor fails to present the creditor's secured claim for money against the Estate within a certain time period or fails to specify the treatment of the claim, then the claim is treated as a preferred debt and lien on the property securing the indebtedness and the creditor's recovery is limited to that property. *See Harrison v. Select Portfolio Servicing, Inc.*, No. 14-21-00425-CV, 2022 WL 17038537, at *3

11

(Tex. App.—Houston [14th Dist.] Nov. 17, 2022, no pet. h.) (mem. op.) (explaining treatment of secured claims under the Estates Code).

Origin, however, did not submit a secured claim against the Estate; Origin's claim against the Estate arises from the guaranty signed by Charles, and Origin filed an authenticated *unsecured* claim against the Estate pursuant to that guaranty. The code sections cited by Mary do not apply to Origin's breach of contract claim against the Estate because the underlying obligation to pay the loan is secured by assets of third parties—the Lauren Corporation and other related companies—rather than Estate assets.[7] *See, e.g.*, Tex. Est. Code § 403.052 (explaining that a creditor with a claim for money *secured by property of the estate* must give notice to the administrator to have the creditor's claim approved as a secured claim to be paid by the estate (emphasis added)); *id.* § 308.053 (providing for notice to secured creditor; "a personal representative of an estate shall give notice of the issuance of the letters [testamentary or of administration] to each person the representative knows to *have a claim for money against the estate that is secured by estate property*" (emphasis added)). This portion of Mary's argument lacks merit.

---

[7] For the first time in her reply brief, Mary asserts that "the Estate owned Lauren's accounts through its ownership of Lauren's stock." This argument would require us to ignore that the Lauren Corporation is a distinct legal entity separate from its owners or shareholders. *See, e.g.*, *Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se., Inc.*, 326 S.W.3d 352, 358 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("A corporation is a legal entity separate and apart from the persons who compose it."); *Davey v. Shaw*, 225 S.W.3d 843, 854 (Tex. App.—Dallas 2007, no pet.) ("Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability."). Even if we were to presume that stock ownership makes the Estate an equitable or beneficial owner of the Lauren Corporation's assets, *see Sneed v. Webre*, 465 S.W.3d 169, 190 (Tex. 2015), including the collateral that Origin allegedly seized, Mary does not direct us to any record evidence establishing that the Estate owns Lauren's stock. Moreover, the unsworn declarations attached to Mary's summary judgment response indicate that Origin seized the operating account of a third company, Lauren Engineers & Constructors, Inc. (*see supra* note 4), and there is nothing in Mary's brief or our record explaining the relationship, if any, between the Estate and that company.

## 2. *Charles's guaranty is binding on the Estate.*

Mary next urges that Origin cannot succeed on its claim against the Estate because, although Mary acknowledges that Charles guaranteed the Lauren Corporation's loan, the Estate itself never guaranteed this obligation. Mary is incorrect. Charles's death did not extinguish his liability on the guaranty he signed while alive. *See* Tex. Est. Code § 355.112 ("On the death of a person jointly bound with one or more other persons for the payment of a debt or for any other purpose, the decedent's estate shall be charged by virtue of the obligation in the same manner as if the obligors had been bound severally as well as jointly."). In fact, Charles's guaranty expressly states that, in the event the guarantor dies, the guaranty "shall be binding upon such Guarantor's estate, legal representative, and heirs," and additionally states that it binds "the heirs, personal representatives, successors and assigns of Guarantor. . . ." There can be no doubt that Charles's Estate is liable under Charles's guaranty. We overrule this portion of Mary's argument.

## 3. *Mary's remaining arguments are unpersuasive.*

Mary's remaining arguments in support of this issue rely on the validity of her first two assertions that Origin cannot proceed against the Estate on Origin's guaranty claim. She urges that, because Origin cannot collect from the Estate, it cannot collect on the guaranties executed by the trusts. She additionally argues that, because Origin has already seized the collateral owed it and cannot recover additional funds from the Estate and because the Estate did not itself guarantee the loan, Origin lacks standing to proceed against the Estate.[8] However, as discussed

---

[8] In making this argument, Mary relies on *In re Estate of Chapman*, No. 06-17-0051-CV, 2017 WL 5180405, at *1 (Tex. App.—Texarkana Nov. 9, 2017, no pet.) (mem. op.). However, *Chapman* is inapplicable: unlike in today's case, the loan at issue there was undertaken by the decedent and secured by the decedent's property. *Id.* at *1 ("Before his death, Chapman had entered into a lien note with the Bank secured by a first lien deed of trust on certain real estate

above, Mary's arguments that Origin cannot collect from the Estate are without merit.  Thus, her arguments that Origin cannot proceed against the trusts and that Origin lacks standing to proceed against the Estate premised on these propositions likewise fail.

We overrule Mary's second issue.

## Conclusion

Having overruled both of Mary's issues, we affirm the trial court's judgment.


/s/    Kevin Jewell
           Justice


Panel consists of Justices Wise, Jewell, and Poissant.

---

located in Lamar County.").