RENDERED: DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0421-ME

M.Y.D.                                                                    APPELLANT

APPEAL FROM MUHLENBERG CIRCUIT COURT
v.          HONORABLE BRIAN WIGGINS, JUDGE
ACTION NO. 23-AD-00029

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES, AS NEXT
FRIEND OF E.A.G.; E.A.G., A MINOR
CHILD; AND J.E.G.                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE: M.Y.D. ("Mother") appeals from an order of the Muhlenberg

Circuit Court terminating her parental rights over E.A.G. ("Child"). In accordance

with *A.C. v. Cabinet for Health and Family Services*, 326 S.W.3d 361 (Ky. App.

2012), Mother's counsel filed an *Anders*[1] brief, accompanied by a motion to

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

withdraw as counsel, alleging that this appeal is wholly frivolous, and that there is no meritorious argument to present to this Court on appeal. Thereafter, this Court advised Mother of her right to continue this appeal *pro se*, and she was provided with additional time to file a brief of her own choosing. Mother did not file a brief or take any other action in relation to this appeal. The Cabinet filed an appellee brief in support of the circuit court's order of termination.

This matter is now ripe for our review. Following careful review of the record, and all applicable law, we grant counsel's motion to withdraw by separate order and affirm the circuit court's order terminating Mother's parental rights.[2]

## I.  BACKGROUND

In December 2019, Child was born in Hopkins County, Kentucky, at home, at twenty-eight weeks of gestation.[3] Thereafter, Mother and Child were transported to a local hospital, where both tested positive for methamphetamines. Due to Child's serious medical condition, she was transferred to Vanderbilt University Medical Center, where she remained until October 9, 2020. When it was time for Child to be discharged, Mother could not be located. Consequently,

---

[2] Appellee, J.E.G. ("Father"), is Child's biological father. Father's parental rights were also terminated as part of the order on appeal. However, Father has not appealed and has not entered an appearance in this appeal despite being named as an appellee. This Opinion considers only the propriety of the circuit court's termination of Mother's parental rights.

[3] A child born between thirty-nine and forty weeks of gestation is considered to be full term.

the Cabinet filed a Dependency, Neglect, and Abuse ("DNA") petition on Child's behalf and was granted custody.

Child was returned to Mother's care on April 5, 2021, but custody was transferred back to the Cabinet on April 14, 2022, after the Cabinet was alerted that Child's medical condition had become dire. On July 20, 2023, the Cabinet petitioned to terminate Mother's parental rights. The circuit court held a two-day evidentiary hearing on January 3 and February 15, 2024. Several witnesses testified at the hearing including: (1) Child's pediatrician, Dr. Billie Galyen; (2) the family's case management nurse, Brittany Sheldon; (3) the family's ongoing social worker, Stephanie Littlepage; (4) Child's foster mother; and (5) Mother. We have carefully reviewed all the testimony. Below, we summarize only those facts which are necessary to a proper understanding of this appeal.

Dr. Galyen explained that shortly after her birth Child was diagnosed with necrotizing enterocolitis ("NEC"), a life-threatening condition common among premature infants, like Child. NEC causes the tissue lining the intestines to become inflamed, die, and slough off. Due to her NEC, Child has a gastrostomy tube ("G-tube") for feedings and receives additional nutrition through a parenteral nutrition ("PN") line.[4] Child also has a peripherally inserted central catheter

---

[4] A PN line is a catheter inserted into a vein to deliver nutrients directly into the bloodstream, bypassing the digestive system, while a G-tube is a feeding tube surgically placed through the abdominal wall directly into the stomach, allowing for liquid nutrition to be delivered through

("PICC") line. Dr. Galyen classified Child as "medically fragile" because her NEC requires ongoing medical care, treatment, and support. Currently, she is seen by multiple medical specialists, including pulmonologists, cardiologists, and gastroenterologists. She also receives speech therapy, occupational therapy, and physical therapy. Dr. Galyen testified that while in Mother's care, Child's PICC line became infected, causing a life-threatening case of sepsis. Additionally, Child was found to be underweight and behind in her developmental milestones after she was removed from Mother's care in 2022. Significant progress occurred after Child reentered foster care.

Nurse Sheldon began working with Mother in March of 2021 shortly before Child was returned to Mother's custody in April 2021, and she elaborated on Mother's care of Child between April 2021 and April 2022. Nurse Sheldon described instances of substandard care, including unhooked oxygen lines, improper handling of medical equipment, and a lack of refrigeration for vital medications and nutritional supplements. Child missed several medical appointments and showed signs of malnutrition under Mother's care. Nurse Sheldon also observed Mother's lack of engagement during visits and

---

the digestive tract. Essentially, a PN line delivers nutrition intravenously, while a G-tube delivers nutrition through the stomach.

unresponsiveness to guidance, eventually prompting her to contact the Cabinet for intervention.

Social Worker Stephanie Littlepage testified about the Cabinet's involvement, beginning in April 2022, when it was reported that Child was in a life-threatening condition. During a home visit, Littlepage discovered that Child's central line had been out for over 24 hours, and Mother refused to transport her to the hospital despite the urgency. After significant persuasion, Mother relented, and Child was hospitalized in critical condition and later transferred to Vanderbilt University Medical Center. Tests revealed that Child had not been receiving her medications, was malnourished, and had a blood clot, requiring a month-long hospitalization.

Littlepage described the Cabinet's repeated efforts to engage Mother in case planning, including tasks like maintaining stable housing, attending parenting classes, following medical advice, and submitting to drug testing. Despite eight attempts at case planning, Mother refused to cooperate, often dismissing the need for such steps. She missed most of Child's medical appointments, did not have stable housing or reliable transportation, and frequently fell asleep during supervised visits. Mother also refused random drug testing and failed to provide consistent financial or medical support for Child. Littlepage concluded that Mother's lack of engagement and failure to meet Child's needs left

no viable alternatives for the Cabinet to pursue, and she recommended terminating Mother's parental rights as being in Child's best interest.

Child's foster mother testified about the demanding nature of Child's care and described her remarkable progress in the foster home. Under consistent medical oversight and therapy, Child has thrived, achieving age-appropriate developmental milestones, and forming meaningful bonds. The foster family expressed a desire to adopt Child, believing it was in her best interest.

Mother's testimony largely contradicted the other evidence presented, as she minimized her shortcomings and attributed difficulties to external factors. She admitted to past substance use but claimed to be sober, although her recent hospital records indicated otherwise.[5] Despite claiming she could meet Child's needs, Mother provided little documentation to support her assertions.

Ultimately, the family court terminated Mother's parental rights on March 6, 2024, citing her inability to provide a safe and stable environment for Child. This appeal followed.

## II.    ANALYSIS

In *A.C.*, this Court adopted the procedures identified in *Anders* to appeal from orders terminating parental rights when counsel has concluded that the

---

[5] Mother had an additional child in July of 2023. Mother and her second child both tested positive for methamphetamines at birth. The second child is also in Cabinet's custody but parental rights as to the second Child are not at issue in the present appeal.

appeal is frivolous.  *A.C.*, 362 S.W.3d at 371.  Counsel is required to "conduct[] a thorough, good-faith review of the record."  *Id.*  "[O]nce counsel has reached the conclusion that the appeal is wholly frivolous, counsel 'should so advise the court and request permission to withdraw.'"  *Id.* (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400).  "An *Anders* brief supplements a motion to withdraw filed after counsel has conscientiously reviewed the record and found the appeal to be frivolous."  *C.R.G. v. Cabinet for Health & Family Servs.*, 297 S.W.3d 914, 915 (Ky. App. 2009).  Thereafter, this Court's duty is to review the record independently for prejudicial error.  *Id.*  This review "is akin to palpable error review requiring us only to ascertain error which 'affects the substantial rights of a party.'"  *A.C.*, 362 S.W.3d at 370.

KRS[6] 625.090 sets forth the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to her child.  First, as it concerns this appeal, the lower court must determine that the child is an abused or neglected child or that the child was previously determined to be an abused or neglected child by a court of competent jurisdiction.  KRS 625.090(1)(a)1.-2.  Second, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or 625.050.  KRS 625.090(1)(b)1.  Third, the lower court must find that termination is in the best

---

[6] Kentucky Revised Statutes.

interest of the child. KRS 625.090(1)(c). Finally, the lower court must find by clear and convincing evidence the existence of one or more of the eleven grounds (a) through (k) listed in KRS 625.090(2). Even if all these requirements are met, the court may choose in its discretion not to terminate a parent's rights if the parent has established by a preponderance of the evidence that the child will not continue to be an abused or neglected child if returned to the parent. KRS 625.090(5).

After the termination hearing, the lower court is required to make findings of fact and conclusions of law supporting its decision on the termination petition. *Id.* "Broad discretion is afforded to trial courts to determine whether parental rights should be terminated, and our review is limited to a clearly erroneous standard." *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021). Factual findings which are supported by substantial evidence of record are not clearly erroneous. *R. M. v. Cabinet for Health and Family Services*, 620 S.W.3d 32, 37 (Ky. 2021). "Substantial evidence is that which is sufficient to induce conviction in the mind of a reasonable person." *Id.* "When the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions which we review *de novo*. If the [lower] court's factual findings are not clearly erroneous and the legal conclusions are correct, we are limited to determining whether the [lower] court

abused its discretion in applying the law to the facts." *H.L.O.*, 621 S.W.3d at 462 (citing CR[7] 61.02).

The family court properly found Child was a neglected Child. An abused or neglected child includes a child whose health or welfare is harmed or threatened with harm when her parent inflicts physical or emotional injury on the child, creates a risk of physical injury other than by accidental means, engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child, continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being, or fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent. KRS 600.020(1)(a).

In paragraph 10 of its findings of fact, the circuit court thoroughly explained its determination that Child was neglected. The circuit court relied significantly on Social Worker Littlepage's testimony, which highlighted Mother's refusal to cooperate with the Cabinet or participate in essential services such as in-person parenting classes, drug testing, and treatment. Additionally, the circuit court emphasized that Mother's neglect of Child's critical medical needs while in

---

[7] Kentucky Rules of Civil Procedure.

her custody led to a prolonged hospitalization. This conclusion was further supported by testimony from Nurse Sheldon and Dr. Galyen. In sum, substantial evidence was presented to uphold the circuit court's finding of neglect.

The next requirement is that termination must be in Child's best interest considering the factors set forth in KRS 625.090(3)(a)-(f). After considering the required factors, circuit court concluded termination was in Child's best interest. The evidence supports this conclusion. Dr. Galyen and Nurse Sheldon explained Child's medical needs, and foster mother testified about the time and attention required to meet those needs day-to-day. In the past, Mother was either unable or unwilling to devote the time and attention necessary to keep Child healthy. She missed numerous medical appointments, failed to follow medical directives, and delayed in seeking medical care when Child became seriously ill. Additionally, at the time of her removal Child was underweight and showed delayed development. After re-entering foster care, Child has been able to catch back up and is doing very well. She is thriving in her current placement and her foster parents are willing to adopt her. For her part, Mother has remained largely noncompliant and has been unwilling to take part in any case planning. Overall, the best interest factors overwhelmingly support the circuit court's conclusion that termination of Mother's parental rights was in Child's best interest.

Finally, there is clear and convincing evidence that one or more of the enumerated termination grounds in KRS 625.090(2) are present. Specifically, the family court found the existence of:

> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;
> . . .
>
> (j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]

Child has been in foster care for some time. She spent over five months in Cabinet custody from October 9, 2020, until April 14, 2021. She was then removed again on April 14, 2022, and has remained in the Cabinet's custody since that time. Mother has missed repeated medical visits and has demonstrated an inability to properly meet Child's medical needs. While Mother did provide

Child with some essentials, the family court doubted her credibility, and overall found more credible the testimony of the Social Worker Littlepage, the foster mother, and Child's healthcare providers. The credibility of the witnesses is a matter squarely within the province of the trial court. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Mother does not have stable housing or transportation. Mother has admittedly recently used illegal substances. Given Mother's repeated obstinance to case plan or drug screen with the Cabinet, we agree there is no reasonable expectation of improvement.

### III. CONCLUSION

The Court in the case now before it has undertaken the appropriate review and agrees with counsel for Mother that there is no nonfrivolous ground that would justify reversal of the family court. Accordingly, we affirm the order of the Muhlenberg Circuit Court, terminating Mother's parental rights.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jonathan S. King
Central City, Kentucky

BRIEF FOR APPELLEE:

Dilissa G. Milburn
Mayfield, Kentucky